# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PETER B. | * |
| (True Name And Address Classified) | * |
| c/o Mark S. Zaid, PC | * |
| 1920 N Street, N.W. | * |
| Suite 300 | * |
| Washington, D.C. 20036 | * |
|  | * |
| Plaintiff, | * |
|  | * |
| v. | *    Civil Action No. 06-1652 (RWR) |
|  | * |
| CENTRAL INTELLIGENCE AGENCY | * |
| Washington, D.C. 20505 | * |
|  | * |
| and | * |
|  | * |
| GENERAL MICHAEL V. HAYDEN | * |
| Director, Central Intelligence Agency | * |
| Washington, D.C. 20505 | * |
|  | * |
| and | * |
|  | * |
| MARGARET PEGGY LYONS | * |
| 9500 Quail Pointe Lane, Apt L | * |
| Fairfax Station, VA 22039-3317 | * |
|  | * |
| and | * |
|  | * |
| DOES #1-10 | * |
|  | * |
| Defendants. | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## FIRST AMENDED COMPLAINT[1]

Plaintiff Peter B. brings this action against defendant Central Intelligence Agency

("CIA"), General Michael V. Hayden, Margaret Peggy Lyons and Does #1-10 pursuant to

---

[1] This document was reviewed for classified information and approved for public filing
by the Central Intelligence Agency.

the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedure

Act, 5 U.S.C. § 701 et seq., the Privacy Act, 5 U.S.C. § 552a et seq., the All Writs Act,

28 U.S.C. § 1651, the CIA's internal regulations and the U.S. Constitution.

## JURISDICTION

1.  This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552a, 702 and

28 U.S.C. § 1331.

## VENUE

2.  Venue is appropriate in the District under 5 U.S.C. § 552a(g)(5), 703 and

28 U.S.C. § 1391.

## PARTIES

3.  Plaintiff Peter B. was formerly affiliated with the CIA in a covert status. His true

identity and past services are known to the defendants.

4.  Defendant CIA is an agency as defined by 5 U.S.C. § 552a(a)(1), 701.

5.  Defendant General Michael V. Hayden became the Director of the Central

Intelligence Agency ("DCI") on May 30, 2006. Porter J. Goss was his immediate

predecessor having served from September 24, 2004 to May 26, 2006. Upon information

and belief, the DCI in office at the time (as well as other unknown senior CIA leadership)

has been personally briefed and involved, in his professional capacity, in matters

involving the CIA's (mis)treatment of Peter B. The DCI maintains an office within the

District of Columbia and, upon information and belief, events pertaining to Peter B. took

place within this jurisdiction.

6.  Defendant Margaret Peggy Lyons was a former supervisor of Peter B. who either

acted illegally or outside of her scope of employment to retaliate against Peter B. She is

2

now an overt senior employee of the CIA and currently on loan to the Director of

National Intelligence John Negroponte. On July 15, 2006, *Time Magazine* reported that

Ms. Lyons, whose husband Donald Keyser recently pled guilty to felony charges relating

to an espionage investigation, had known that her husband had improperly kept classified

documents at home, and that she had done the same.

7.   Does #1-#10 are either unknown and/or covert officials of the CIA who also either

acted illegally or outside of their scope of employment to retaliate against Peter B.

## FACTS

8.   In the early 1990s, Peter B. entered into a covert operational relationship with the

CIA. The exact nature of his employment status in this relationship is in dispute.

9.   Peter B. asserts that at a certain point in the 1990s he became a full staff employee

possessive of all constitutional, statutory and regulatory rights as any other CIA federal

employee. This would include, among other things, the usual rights, privileges and

benefits that are accorded federal employees.

10. The CIA asserts Peter B. was some sort of independent contractor whose

relationship with the government can be terminated at its convenience. It further claims

documentation is in its possession that supports its position but it refuses to reveal the

information.

11. During the course of his relationship with the CIA, Peter B. incurred

approximately $30,000 - $40,000 worth of operational expenses for which he was never

reimbursed. These expenses were incurred under specific instructions of the CIA and

proper receipts were submitted.

12. On or about October 3, 2002, Peter B.'s relationship was formally terminated by the CIA. At no time, despite multiple requests, has he ever been told the reason(s) for his termination other than for the "convenience of the government."

13. Upon information and belief, Margaret Peggy Lyons and Does #1-#10 took steps based on their own personal reasons to unlawfully and/or unethically ensure Peter B.'s relationship with the CIA was terminated. This included, but was not limited to, the dissemination of false information concerning Peter B.

14. Upon information and belief, Peter B.'s situation, to include congressional interaction and publicized legal actions that have been initiated on his behalf or that of his family, have led to the inclusion of the DCI in office at the time to be briefed on relevant matters and become involved in the decision-making process to determine how best the CIA should react.

15. As a result of the CIA's actions Peter B. was abandoned at his domestic post, where he had been required to live by the CIA in order to receive a specific assignment, and forced to incur significant expenses that exceeded $15,000.

16. Peter B.'s CIA sponsored health insurance and Cobra was terminated by the CIA in or around September 2002 despite continued payment of his premiums.

17. The actions that led to the circumstance above were undertaken by the CIA through the conduct of the DCI, Lyons and Does #1-#10. These actions, except for that of the DCI and likely other senior leadership, were of a personal nature, unlawful and/or retaliatory.

18. Peter B. was never provided any administrative remedies to challenge the CIA's actions to terminate his employment which, as a federal employee, he was entitled to

4

pursue. This included, but was not limited to, the ability to appeal the CIA's decision to the Personnel Evaluation Board. Alternatively, even as a contractor, Peter B. was entitled to have the CIA follow specific regulations, which were ignored, governing termination.

19. Up to the date of the filing of this case and continuing, Peter B. has made numerous efforts to administratively resolve these disputes. In attempting to do so he has incurred more than $35,000 in out-of-pocket expenses that he otherwise would not be responsible for had the CIA acted lawfully.

20. Peter B. has been provided one or more offers of employment with government contractors involved in business operations with the CIA and other federal agencies. The work Peter B. was to perform required a security clearance. At the time Peter B. had been terminated by the CIA he possessed a TS/SCI clearance that was still active. During 2001 – 2006, he was repeatedly verbally informed by representatives of the CIA that there were no security clearance issues or concerns within his CIA files. Despite requests for clarification, no further information has been provided by the CIA. Upon information and belief, these CIA representatives were either unaware of false and inaccurate derogatory information within Peter B.'s files or they lied to him or the CIA has lied to government contractors inquiring about Peter B.

21.  One or more of the government contractors attempted to have the CIA transfer or renew Peter B.'s security clearance. Upon information and belief, the CIA disseminated false and defamatory information concerning Peter B. to the government contractors for the purpose of causing the potential employer to either never provide Peter B. with an offer of employment or withdraw any such offer that had been provided. As a result of the

defendants' actions, Peter B. has suffered harm, both financially and with respect to his health.

## FIRST CAUSE OF ACTION
## (DECLARATORY JUDGMENT, APA)

22. Peter B. repeats and realleges the allegations contained in paragraphs 1 through 21 above, inclusive.

23. In the early 1990s, Peter B. entered into a covert operational relationship with the CIA. The exact nature of his employment status in this relationship is in dispute.

24. At a certain point in the 1990s Peter B. became a full staff employee possessive of all constitutional, statutory and regulatory rights as any other CIA federal employee. This include with respect to, among other things, the usual rights, privileges and benefits that are accorded federal employees.

25. The CIA asserts Peter B. was some sort of independent contractor whose relationship with the government can be terminated at its convenience. It further claims documentation is in its possession that supports its position but it refuses to reveal the information.

26. Peter B. was entitled to all rights, benefits and privileges accorded to federal employees who work for the CIA. That included, but was not limited to, the ability to appeal a termination determination to the CIA's Personnel Evaluation Board.

27. Due to the CIA's misclassification of Peter B.'s employment status, the CIA's decision, which were taken due to the actions of the defendants, to terminate his employment in the manner it did was unlawful. Additionally, the CIA's misclassification of Peter B's employment status was arbitrary, capricious, an abuse of discretion, contrary

to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, without observance of procedure required by law, unsupported by substantial evidence and unwarranted by the facts thereby causing Peter B. to suffer legal wrongs under the Administrative Procedures Act.

28. The defendants' actions caused Peter B. significant emotional, professional and economic harm.

### SECOND CAUSE OF ACTION
### (APA/U.S. CONSTITUTION – DENIAL OF DUE PROCESS IN TERMINATION OF FEDERAL  EMPLOYEE)

29. Peter B. repeats and realleges the allegations contained in paragraphs 1 through 21 above, inclusive.

30. In the early 1990s, Peter B. entered into a covert operational relationship with the CIA.

31. At a certain point in the 1990s Peter B. became a full staff employee possessive of all constitutional, statutory and regulatory rights as any other CIA federal employee. This include with respect to, among other things, the usual rights, privileges and benefits that are accorded federal employees.

32. On or about October 3, 2002, Peter B.'s employment with the CIA was terminated. At no time, despite multiple requests, has he ever been told the reason(s) for his termination other than for the "convenience of the government."

33. The CIA failed to accord Peter B. any due process and denied him any administrative rights that federal employees in the employ of the CIA must be provided before their employment is terminated. This included, but was not limited to, the ability to challenge this termination before a Personnel Evaluation Board.

7

34. The CIA, its officers and employees, to include but not limited to, the DCI, Mary Margaret Lyons and Does #1-#10, committed and undertook actions that were arbitrary, capricious and/or an abuse of discretion pertaining to Peter B., took actions that were unwarranted by the facts, unsupported by substantial evidence, in violation of internal regulations and federal statutes, contrary to constitutional right, power, privilege, or immunity, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right thereby causing Peter B. to suffer legal wrongs under the Administrative Procedures Act.

35. The defendants' actions caused Peter B. significant emotional, professional and economic harm.

## THIRD CAUSE OF ACTION
## (APA/U.S. CONSTITUTION – DENIAL OF DUE PROCESS IN TERMINATION OF CONTRACTOR)

36. Peter B. repeats and realleges the allegations contained in paragraphs 1 through 21 above, inclusive.

37. In the early 1990s, Peter B. entered into a covert operational relationship with the CIA.

38. The CIA asserts Peter B. was some sort of independent contractor whose relationship with the government can be terminated at its convenience. It further claims documentation is in its possession that supports its position but it refuses to reveal the information.

39. On or about October 3, 2002, Peter B.'s employment with the CIA was terminated allegedly for the convenience of the government. At no time, despite multiple requests, has he ever been told the reason(s) for his termination other than for the "convenience of the government."

40. The CIA is not permitted, notwithstanding any contractual language to the contrary, to violate Peter B.'s Constitutional, statutory or regulatory rights.

41. The CIA inappropriately terminated Peter B.'s relationship in violation of CIA regulations and the U.S. Constitution. This constituted a final agency decision. The CIA does not possess absolute discretion in terminating contractors in bad faith, or without either good cause or an opportunity for a hearing.

42. The CIA, its officers and employees, to include but not limited to, the DCI, Mary Margaret Lyons and Does #1-#10, committed and undertook actions that were arbitrary, capricious and/or an abuse of discretion pertaining to Peter B., took actions that were unwarranted by the facts, unsupported by substantial evidence, in violation of internal regulations and federal statutes, contrary to constitutional right, power, privilege, or immunity, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right thereby causing Peter B. to suffer legal wrongs under the Administrative Procedures Act.

43. The defendants' actions caused Peter B. significant emotional, professional and economic harm.

## FOURTH CAUSE OF ACTION
## (APA – FAILURE TO FOLLOW REGULATIONS OR STATUTES)

44. Peter B. repeats and realleges the allegations contained in paragraphs 1 through 21 above, inclusive.

45. In the early 1990s, Peter B. entered into a covert operational relationship with the CIA.

46. Peter B. asserts that at a certain point in the 1990s he became a full staff employee possessive of all constitutional, statutory and regulatory rights as any other CIA federal employee. This would include, among other things, the usual rights, privileges and benefits that are accorded federal employees.

47. The CIA asserts Peter B. was some sort of independent contractor whose relationship with the government can be terminated at its convenience. It further claims documentation is in its possession that supports its position but it refuses to reveal the information.

48. On or about October 3, 2002, Peter B.'s employment with the CIA was terminated. At no time, despite multiple requests, has he ever been told the reason(s) for his termination other than for the "convenience of the government."

49. Regardless of whether Peter B. was a staff employee or some sort of contractor his termination from the CIA violated regulations and/or statutes.

50. Regardless of whether Peter B. was a staff employee or some sort of contractor the failure of the CIA to reimburse him approximately $30,000 - $40,000 worth of operational expenses that he incurred under specific instructions of the CIA and for which he submitted proper receipts violated CIA regulations and/or statutes.

10

51. Regardless of whether Peter B. was a staff employee or some sort of contractor the CIA's abandonment of him at his domestic post, where he had been required to live by the CIA in order to receive a specific assignment, which forced him to incur significant expenses that exceeded $15,000 violated CIA regulations and/or statutes.

52. Regardless of whether Peter B. was a staff employee or some sort of contractor the actions of the CIA to cancel his sponsored health insurance and Cobra despite the fact he had continued payment of his premiums violated CIA regulations and/or statutes.

53. The CIA, its officers and employees, to include but not limited to, the DCI, Mary Margaret Lyons and Does #1-#10, committed and undertook actions in violation of internal regulations and federal statutes thereby causing Peter B. to suffer legal wrongs under the Administrative Procedures Act.

54. The defendants' actions caused Peter B. significant emotional, professional and economic harm.

**FIFTH CAUSE OF ACTION**
**(NAME CLEARING HEARING)**

55. Peter B. repeats and realleges the allegations contained in paragraphs 1 through 21 above, inclusive.

56. Peter B. asserts that at a certain point in the 1990s he became a full staff employee possessive of all constitutional, statutory and regulatory rights as any other CIA federal employee. This would include, among other things, the usual rights, privileges and benefits that are accorded federal employees.

57. The CIA asserts Peter B. was some sort of independent contractor whose relationship with the government can be terminated at its convenience. It further claims

11

documentation is in its possession that supports its position but it refuses to reveal the information.

58. On or about October 3, 2002, Peter B.'s relationship was formally terminated by the CIA. At no time, despite multiple requests, has he ever been told the reason(s) for his termination other than for the "convenience of the government."

59. On one or more occasions since his termination the CIA, and one or more of the individual defendants, has intentionally interfered with Peter B's efforts to obtain employment in his chosen field of profession with government contractors, particularly by impeding the transfer of his security clearance or by implying derogatory information existed that would preclude the granting of a security clearance.

60. Although Peter B. was informed by CIA officials that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to either never offer or withdraw an existing employment offer.

61. The effect of the CIA's actions is to stigmatize and harm Peter B. and, as a practical matter, serves to deny/revoke his security clearance without affording him any administrative rights as required by law to challenge such a decision.

62. The CIA is not permitted, notwithstanding any contractual language to the contrary, to violate Peter B.'s Constitutional rights, as set forth by the Constitution of the United States.

63. Upon information and belief, the CIA, through the actions of the DCI, Margaret Peggy Lyons and/or Does #1-#10, unlawfully and/or unethically caused Peter B.'s relationship with the CIA to be terminated. This included through, but was not limited to, the dissemination of false and defamatory impressions about Peter B. throughout certain divisions of the CIA that effectively stigmatized him.

64. The CIA, through the actions of its officials and employees including Margaret Peggy Lyons and/or Does #1-#10 conspired to seriously damage or destroy Peter B.'s good name which led to his termination.

65. The CIA improperly, unlawfully and unconstitutionally terminated Peter B.'s employment.

66. Despite repeated requests for the reasons underlying the CIA's behavior, none has ever been provided. As no opportunity was ever provided Peter B. for an opportunity to refute any allegations made against him, especially those that serve as a practical matter to deny/revoke his security clearance, or clear his name, he is entitled to a name-clearing hearing and a written decision arising therefrom. The name-clearing hearing can be accommodated in a secure environment within a CIA facility and with cleared counsel present so that no classified information would be at risk of improper disclosure.

67. Peter B. has suffered actual adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present or future financial opportunities.

## SIXTH CAUSE OF ACTION
## (PRIVACY ACT)

68. Peter B. repeats and realleges the allegations contained in paragraphs 1 through 21 above, inclusive.

69. The CIA maintains records within one or more Privacy Act Systems of Records that pertain to Peter B.

70. Peter B. asserts that at a certain point in the 1990s he became a full staff employee possessive of all constitutional, statutory and regulatory rights as any other CIA federal employee. This would include, among other things, the usual rights, privileges and benefits that are accorded federal employees.

71. The CIA asserts Peter B. was some sort of independent contractor whose relationship with the government can be terminated at its convenience. It further claims documentation is in its possession that supports its position but it refuses to reveal the information.

72. On or about October 3, 2002, Peter B.'s relationship was formally terminated by the CIA. At no time, despite multiple requests, has he ever been told the reason(s) for his termination other than for the "convenience of the government."

73. On one or more occasions since his termination the CIA, and one or more of the individual defendants, has intentionally interfered with Peter B's efforts to obtain employment in his chosen field of profession with government contractors, particularly by impeding the transfer of his security clearance or by implying derogatory information existed that would preclude the granting of a security clearance.

74. Although Peter B. was informed by CIA officials that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to either never offer or withdraw an existing employment offer.

75.  The CIA and one or more of the individual defendants has failed to maintain Peter B.'s records with such accuracy, relevance, timeliness and completeness as is reasonably necessary to denote his true employment status with the CIA and the extent to which he possesses a security clearance.

76. The CIA willfully and/or intentionally terminated Peter B.'s relationship with the Agency in a manner that was derogatory to his reputation. Based on the CIA's actions and decisions, it appears Peter B. is precluded from participating in classified projects conducted by the federal government thereby losing a right, benefit, privilege, or opportunity that was available to him under Federal law. The CIA compiled information and arrived at conclusions that were irrelevant, false, malicious and defamatory, incomplete, inaccurate, and untimely as to Peter B., who was never provided an opportunity to review or challenge any evaluation or determination that led to his termination or that pertains to his security clearance.

77. The CIA's failure to collect information directly from Peter B. resulted in adverse determinations concerning his rights, benefits, privileges, or opportunities in violation of 5 U.S.C. § 552a(e)(2) and (g)(1(C).

78. The CIA, its employees and officers, to include one or more of the individual defendants, knew or should have known that their actions were improper, unlawful and/or in violation of the Privacy Act.

79. The CIA, its employees and officers, to include one or more of the individual defendants, acted intentionally or willfully in violation of Peter B.'s privacy rights.

80. As a result of one or more of the defendants' violations of the Privacy Act, Peter B. has suffered adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, a worsening of his diabetic condition, and lost or jeopardized present or future financial opportunities.

## SEVENTH CAUSE OF ACTION
### (PRIVACY ACT)

81. Peter B. repeats and realleges the allegations contained in paragraphs 1 through 21 above, inclusive.

82. The CIA maintains records within one or more Privacy Act Systems of Records that pertain to Peter B.

83. Peter B. asserts that at a certain point in the 1990s he became a full staff employee possessive of all constitutional, statutory and regulatory rights as any other CIA federal employee. This would include, among other things, the usual rights, privileges and benefits that are accorded federal employees.

84. The CIA asserts Peter B. was some sort of independent contractor whose relationship with the government can be terminated at its convenience. It further claims documentation is in its possession that supports its position but it refuses to reveal the information. These documents, should they exist, would be maintained within an applicable Privacy Act System of Records.

85. On or about October 3, 2002, Peter B.'s relationship was formally terminated by the CIA. At no time, despite multiple requests, has he ever been told the reason(s) for his termination other than for the "convenience of the government."

86. On one or more occasions since his termination the CIA, and one or more of the individual defendants, has intentionally interfered with Peter B's efforts to obtain employment in his chosen field of profession with government contractors, particularly by impeding the transfer of his security clearance or by implying derogatory information existed that would preclude the granting of a security clearance.

87. Although Peter B. was informed by CIA officials that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to either never offer or withdraw an existing employment offer.

88.  The CIA, and one or more of the individual defendants, has failed to maintain Peter B.'s records with such accuracy, relevance, timeliness and completeness as is reasonably necessary to denote his true employment status with the CIA and the extent to which he possesses a security clearance, or that any derogatory information exists within his record systems.

89. The CIA, and one or more of the individual defendants, has already disseminated, at least verbally, inaccurate information from Peter B.'s Privacy Act System of Records to at least one government contractor that had hired Peter B. which, as a result, led to the rescission of the employment offer due to alleged security concerns. The actions by the CIA related to the qualifications, character, rights or opportunities of, or benefits to Peter B. and violated 5 U.S.C. § 552a(e)(5).

90. The CIA, its employees and officers, to include one or more of the individual defendants, knew or should have known that their actions were improper, unlawful and/or in violation of the Privacy Act.

91. The CIA, its employees and officers, to include one or more of the individual defendants, acted intentionally or willfully in violation of Peter B.'s privacy rights.

92. As a result of one or more of the defendants' violations of the Privacy Act, Peter B. has suffered adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present or future financial opportunities.

<u>EIGHTH CAUSE OF ACTION</u>
<u>(PRIVACY ACT)</u>

93. Peter B. repeats and realleges the allegations contained in paragraphs 1 through 21 above, inclusive.

94. The CIA maintains records within one or more Privacy Act Systems of Records that pertain to Peter B.

95. Peter B. asserts that at a certain point in the 1990s he became a full staff employee possessive of all constitutional, statutory and regulatory rights as any other CIA federal employee. This would include, among other things, the usual rights, privileges and benefits that are accorded federal employees.

96. The CIA asserts Peter B. was some sort of independent contractor whose relationship with the government can be terminated at its convenience. It further claims documentation is in its possession that supports its position but it refuses to reveal the information.

97. On or about October 3, 2002, Peter B.'s relationship was formally terminated by the CIA. At no time, despite multiple requests, has he ever been told the reason(s) for his termination other than for the "convenience of the government."

98. On one or more occasions since his termination the CIA, and one or more of the individual defendants, has intentionally interfered with Peter B's efforts to obtain employment in his chosen field of profession with government contractors, particularly by impeding the transfer of his security clearance or by implying derogatory information existed that would preclude the granting of a security clearance.

99. Although Peter B. was informed by CIA officials that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to either never offer or withdraw an existing employment offer.

100. Prior to disseminating records about Peter B. to persons other than an agency, the CIA and one or more of the individual defendants failed to make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes.

101. The CIA and one or more of the individual defendants has already disseminated inaccurate information from Peter B.'s Privacy Act System of Records to at least one government contractor that had hired Peter B. which, as a result, led to the rescission of the employment offer due to alleged security concerns. The actions by the CIA violated 5 U.S.C. § 552a(e)(6).

102. The CIA, its employees and officers, to include one or more of the individual defendants, knew or should have known that their actions were improper, unlawful and/or in violation of the Privacy Act.

103. The CIA, its employees and officers, to include one or more of the individual defendants, acted intentionally or willfully in violation of Peter B.'s privacy rights.

104. As a result of one or more of the defendants' violations of the Privacy Act, Peter B. has suffered adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present or future financial opportunities.

### NINTH CAUSE OF ACTION
### (FIFTH AMENDMENT LIBERTY INTEREST)

105. Peter B. repeats and realleges the allegations contained in paragraphs 1 through 21 above, inclusive.

106. Peter B. asserts that at a certain point in the 1990s he became a full staff employee possessive of all constitutional, statutory and regulatory rights as any other CIA federal employee. This would include, among other things, the usual rights, privileges and benefits that are accorded federal employees.

107. The CIA asserts Peter B. was some sort of independent contractor whose relationship with the government can be terminated at its convenience. It further claims documentation is in its possession that supports its position but it refuses to reveal the information.

108. On or about October 3, 2002, Peter B.'s relationship was formally terminated by the CIA. At no time, despite multiple requests, has he ever been told the reason(s) for his termination other than for the "convenience of the government."

109. On one or more occasions since his termination the CIA, and one or more of the individual defendants, has intentionally interfered with Peter B's efforts to obtain

employment in his chosen field of profession with government contractors, particularly by impeding the transfer of his security clearance or by implying derogatory information existed that would preclude the granting of a security clearance.

110.  Although Peter B. was informed by CIA officials that no security clearance issues existed that would cause a problem, the government contractors were told differently thereby causing them to either never offer or withdraw an existing employment offer.

111.  The CIA's dissemination of false information concerning Peter B., particularly with respect to his security clearance, has the same impact as actually denying or revoking his security clearance. However, had either of those events occurred Peter B. would have been entitled to administrative due process that would have permitted him to challenge the unfavorable determination. Instead, the CIA is purposefully taking steps to ensure Peter B. is precluded from pursuing an administrative challenge to the CIA's actions. This is part of a concerted pattern and practice by the CIA to avoid the legal requirements imposed upon it with respect to the denial/revocation of security clearances.

112.  The CIA is not authorized to operate in a manner whereby an individual can be denied "Liberty" without "due process of law" in contravention of the Fifth Amendment. The lack of "due process rights" accorded to certain individuals who have effectively been denied a security clearance deprived Peter B. of the ability to challenge the accuracy of the evidence upon which the CIA's decision rested.

113.  The CIA's actions, and that of one or more of the defendants, have excluded Peter B. from participating in his chosen profession. Should Peter B. apply to work for a federal agency or government contractor for a position that involves access to classified

information, the CIA will disseminate information it maintains about Peter B., to include known inaccurate and false information that will adversely impact upon his reputation and chances for additional employment opportunities. As a result, the CIA has effectively publicly stigmatized Peter B.'s reputation and imparted a "status change" upon him that has implicated his liberty interests.

114.  As a result, Peter B. has suffered actual adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present or future financial opportunities.

WHEREFORE, Peter B. requests that the Court award him the following relief:

(1) Declare that as of a date certain Peter B. was a staff employee of the CIA entitled to all rights, privileges and benefits afforded federal employees;

(2) Declare and find that the CIA violated the Administrative Procedure Act, its internal regulations and/or statutes governing Peter B's termination as either a staff employee or contractor;

(3) Declare and find that the CIA violated the Administrative Procedure Act, its internal regulations and/or statutes by its failure to reimburse certain out-of-pocket operational expenses and cancellation of his health insurance and Cobra, as well as its causing Peter B. to incur moving and other expenses associated with the termination or his challenges to the CIA's actions;

(4) Declare and find that the defendants violated the Privacy Act by failing to collect information directly from Peter B., failed to maintain accurate, relevant, timely or complete records pertaining to Peter B. and/or failed to make reasonable efforts to assure

that such records regarding Peter B. are accurate, complete, timely and relevant prior to dissemination;

(5) Declare and find that the defendants violated Peter B.'s liberty interest under the Fifth Amendment to the Constitution;

(6) Invoke its equitable powers to expunge all records or information that is inaccurate, derogatory or infringes upon Peter B.'s express or implied constitutional or statutory rights;

(7) Require the CIA to rescind its termination decision and afford Peter B. appropriate due process;

(8) Require the CIA to reimburse Peter B. for all associated expenses to resolve these disputes;

(9) Refer those CIA officials responsible for violating the Privacy Act for prosecution under 5 U.S.C. § 552a(i)(1);

(10) Award Peter B. the costs of the action and reasonable attorney fees under the Equal Access to Justice Act or any other applicable law; and

(11) grant such other relief as the Court may deem just and proper.

Date:   January 7, 2007

Respectfully submitted,

/s/

_____
Mark S. Zaid, Esq. (D.C. Bar #440532)
Mark S. Zaid, PC
1920 N Street, N.W.,  Suite 300
Washington, D.C.  20036
(202) 454-2809

Attorney For Plaintiff