UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER B.                                          )
                                                  )
        Plaintiff,                                )
                                                  )
            v.                                    )     Civil Action No. 1:06CV01652 (RWR)
                                                  )
CENTRAL INTELLIGENCE AGENCY,                      )
        et al.,                                   )
                                                  )
        Defendants.                               )
                                                  )
_____ )

## REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

In this action, a former covert employee of the Central Intelligence Agency ("CIA") raises

three categories of claims: (1) claims seeking judicial review under the Administrative Procedure

Act ("APA"), 5 U.S.C. § 706, of his termination and various other personnel actions (Counts I-IV),

(2) due process claims based on an alleged deprivation of a liberty interest (Counts V and IX), and

(3) claims alleging violations of the Privacy Act, 5 U.S.C. § 552a (Counts VI-VIII).  As explained

in defendants' opening brief, each of these claims should be dismissed.

Plaintiff's APA claims (Counts I-IV) should be dismissed: (1) the Court lacks jurisdiction

because the Civil Service Reform Act ("CSRA") provides the exclusive means for reviewing

personnel actions, and (2) they fail to state a claim.  In his opposition, plaintiff offers no arguments

to the contrary.  Instead, he attempts to gloss over these defects in a footnote by melding these claims

into his due process claims alleging a deprivation of a liberty interest (Counts V and IX).  As

explained below, this attempt to avoid dismissal of the APA claims is unavailing because (1) he

concedes that the Court lacks jurisdiction of his APA claims raising statutory and regulatory claims,

and (2) none of his APA claims, whether framed as constitutional or otherwise, state a claim.

Plaintiff's claims alleging a due process claim based on deprivation of a liberty interest (Counts V and IX) should also be dismissed. Plaintiff cannot establish any deprivation of a liberty interest with respect to his termination because he has cannot show any public disclosure regarding his termination. Moreover, even if the grounds for termination had been disclosed, it was not stigmatizing. Unlike Doe v. U.S. Dep't of Justice, 753 F.2d 1093 (D.C. Cir. 1985), the CIA did not terminate the plaintiff on the ground of dishonesty or other grounds that impugned his reputation. Instead, as plaintiff concedes, the only grounds presented for dismissal was the convenience of the government. 1st Am. Compl. ¶ 12. Plaintiff also cannot state a liberty interest based on purported statements made to government contractors. The fact that the CIA could not confirm his true identity as a former CIA employee is not a change in status, but simply a reflection of the covert nature of his employment. In any case, even if his security clearance had been revoked, preclusion from a job requiring a security clearance does not invoke a liberty interest. Plaintiff's reliance on Kartseva v. Dep't of State, 37 F.3d 1524 (D.C. Cir. 1994), is misplaced because that case did not involve a job requiring a national security clearance.

Finally, plaintiff's Privacy Act claims should also be dismissed because he has not pled his claim with sufficient details. Moreover, even if the Court were to find that he had pled the claims with sufficient details, he fails to state a claim under the cited subsections of the Privacy Act.

## I.     PLAINTIFFS' APA CLAIMS (COUNTS I-IV) SHOULD BE DISMISSED.

In Counts I - IV of his complaint, plaintiff challenges various personnel actions taken by the CIA. Specifically, he alleges that CIA erroneously classified him as a contract employee (rather than a staff employee), improperly terminated his employment, failed to reimburse him for $30,000-

40,000 worth of operational expenses, failed to reimburse him for $15,000 of other expenses, and cancelled his health benefits. 1st Am. Compl. ¶¶ 22-62. As explained in defendants' opening brief, these claims should be dismissed for lack of jurisdiction and failure to state a claim. Memorandum in Support of Motion to Dismiss ("Def. Mem."), at 5-14.

In his opposition, plaintiff does not directly refute either of these grounds for dismissing these four claims. Indeed, he concedes that the CSRA precludes his APA claims if they "were solely to enforce CIA regulations." Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl. Opp."), at 7 n.2. He argues, however, that the Court should delay ruling on these claims because the APA "also addresses constitutional claims" and "[thus], the types of claims sought for review . . . would still be relevant to any determination of whether his liberty interests were violated." Id. He suggests that the Court should, therefore, "delay ruling on these claims until the facts – especially [his] employment status with the CIA – are clarified." Id.

Plaintiff's request for the Court to defer its ruling on these APA claims is unavailing. First, plaintiff's suggestion that the Court should delay ruling on his APA claims until the facts regarding his employment status (i.e. whether he was a staff employee or a contract employee) are clarified makes no sense. As explained in the opening brief, none of the claims raised by plaintiff turn on whether he was a contract or staff employee. Def. Mem. at 8-12. For example, whether he was a staff employee or a contract employee, the Director of the CIA has discretion to terminate his employment, and plaintiff has no statutory or regulatory right to seek administrative review of that decision. Id. at 8-11. Nothing in plaintiff's opposition suggests otherwise. The issue of whether he was contract employee or a staff employee is simply a straw man.

Second, only two of his APA claims – Counts II and III – raise constitutional issues. Count

3

I alleges that CIA misclassified plaintiff as a contract employee, and Count IV alleges that the CIA violated unspecified statutes and regulations by terminating his employment without cause or opportunity to challenge, failing to reimburse him for certain expenses and cancelling his health insurance. Thus, even if the Court had jurisdiction to consider his APA claims alleging constitutional claims, the CSRA would still preclude his non-constitutional APA claims.

Third, even if the CSRA did not preclude his APA claims, these claims should be dismissed for failure to state a claim. Def. Mem. at 8-13. The Director of the CIA has discretion to terminate a employee for any reason, 50 U.S.C. § 403-4a(e)(1), and the decision is not subject to review. Def. Mem. at 9-10. Nothing in the CIA regulations limits this discretion or grants a CIA employee an enforceable right to seek review of his termination. Id. at 10-11. Since he has no property interest in his position, there was no process that was due him.[1] For this reason, the plaintiff's statutory, regulatory and due process challenges to his termination in Counts II-IV fail to state a claim.[2] Moreover, plaintiff's claim in Count IV with respect to reimbursement of expenses and cancellation

---

[1] In his declaration, plaintiff's counsel asserts that he has "never encountered a situation, notwithstanding what internal CIA regulations may permit with respect to discretionary authority, where that individual is not accorded some semblance of due process through a Personnel Evaluation Board." Declaration of Mark Zaid ("Zaid Decl."), ¶ 7. This assertion is surprising since Mr. Zaid represented a plaintiff in another case in which the plaintiff also complained that he did not have an opportunity to challenge his termination before the PEB. Doe v. Goss, 2007 U.S. Dist. LEXIS 2708, * 5 (D.D.C. Jan. 12, 2007) (attached to Pl. Opp. as Exhibit 3).

[2] Unlike the non-APA due process claims raised by plaintiff in Counts V and IX, the due process claims in Counts II and III do not allege a deprivation of a liberty interest. Instead, they are predicated on the erroneous assumption that the CIA's termination of his employment violated a purported property interest. But, as explained in Def. Mem. at 13-14, there is no constitutionally protected property interest in a job with the CIA and thus no process is due. Doe v. Gates, 981 F.2d 1316, 1321 (D.C. Cir.), cert. denied, 510 U.S. 928 (1993). Accord Dickson v. United States, 831 F. Supp. 893 (D. D.C. 1993) (plaintiff has no protected property interest in employment at the CIA).

4

of health insurance should be dismissed because (1) he has not adequately pled these claims and (2) the APA does not authorize monetary damages for such claims. Id. at 11-12. Plaintiff offers no argument to the contrary on any of these claims in his opposition. As this Court has recognized, where, as here, "the opposing party files a responsive memorandum but fails to address certain arguments made by the moving party," the court should treat "those arguments as conceded." United States v. Real Property Identified as Parcel 03179-005R, 287 F. Supp.2d 45, 61 (D.D.C. 2003).

Accordingly, Counts I-IV should be dismissed for lack of jurisdiction and failure to state a claim.

## III.     COUNTS V AND IX SHOULD BE DISMISSED FOR FAILURE TO STATE CLAIM FOR DEPRIVATION OF A LIBERTY INTEREST.

Plaintiff's other two due process claims allege that he was deprived of a liberty interest. See 1st Am. Compl. ¶¶ 55-67, 105-114. To establish a deprivation of a liberty interest, a plaintiff must first show that the defendant negatively altered his status and that in altering his status the defendant

> stigmatizes the employee or impugns his reputation so as to either (1) seriously damage his standing and associations in his community ("reputation-plus'"), or (2) foreclose his freedom to take advantage of other employment opportunities by either (a) automatically excluding him from a definite range of employment opportunities with the government or (b) broadly precluding him from continuing his chosen career ("'stigma or disability").

M.K. v. Tenet, 196 F. Supp. 2d 8, 15 (D.D.C. 2001). Accord Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972); Paul v. Davis, 424 U.S. 693, 710-711 (1976). Plaintiff cannot make that showing either with respect to his termination or the allegation that the CIA disseminated inaccurate information to government contractors.

**A.      Plaintiff Cannot Show That He Was Deprived of a Liberty Interest In Connection with his Termination.**

As explained in Def. Mem. at 15-16, plaintiff cannot establish a deprivation of liberty claim with respect to his termination under the "reputation-plus" prong because (1) he has not alleged that there was any public disclosure of his termination and (2) the ground for his termination was not stigmatizing. He also cannot establish a liberty claim with respect to the "stigma or disability" prong because CIA's termination of employment of an individual does not preclude him from seeking other government jobs for which he is qualified, 50 U.S.C. § 403-4a(e)(2). Def. Mem. at 16.

In his opposition, plaintiff does not refute his inability to state a claim under the "stigma or disability" prong with regard to his termination. Instead, he bases his argument solely on the "reputation-plus" prong. He argues that he states a claim under that prong because he has alleged that "defendants Lyons and Does #1-#10 disseminated inaccurate and/or derogatory information throughout the CIA that unlawfully and unethically caused his employment with the CIA to be terminated." Pl. Opp. at 9 (citing 1st Am. Compl. ¶ 63). This claim, however, is insufficient for at least two reasons. First, by his own admission, there is no public dissemination, only allegedly dissemination "throughout the CIA." Id. Second, this claim confuses a due process claim based on a property interest with a due process claim based on a liberty interest. Unlike a claim based on a property interest, a "liberty interest implicates [an employee's] post-employment reputation rather than any right to continued employment with the [agency]." Doe v. U.S. Dep't of Justice, 753 F.2d 1092, 1102 (1985). Therefore, plaintiff cannot base his liberty claim on an allegation that the termination itself was unlawful. He must show that a public statement regarding the termination damaged his reputation. He has failed to do so.

6

Plaintiff also tries to support his liberty claim by asserting that the public disclosure requirement can be met if a personnel file containing the alleged defamatory charges is available to future employers. Pl. Opp. at 9-10. This argument is, however, flawed in two ways. First, plaintiff's suggestion that his personnel file may be available to employers ignores the fact that he was a covert employee and, therefore, his connection with the CIA cannot be publicly revealed. Second, unlike the cases cited by plaintiff, CIA regulations explicitly state that "the reasons for the termination or resignation of Agency employment shall not be disseminated outside the Agency to any private organization or Federal or other governmental body without the consent of the employee," except in limited circumstances. See Exhibit 2 to Declaration of Linda Dove. Instead, "responses to requests for information as to why an individual's employee was terminated shall be limited to a statement that the employment was terminated pursuant to statutory authority." Id. Moreover, while CIA may disclose "information relevant to a lawful personnel, physical, or communications security investigation or proceeding or a hiring, licensing, or similar decision by another federal agency," the regulations do not make information regarding the termination available to the general public or private employers. Id. Such "restricted disclosure" of the material to other federal agencies "does not infringe upon constitutional interests." See Doe v. Cheney, 885 F.2d 898, 910 (D.C. Cir. 1999).[3] Accord Perry v. FBI, 781 F.2d 1294 (7th Cir. 1986) (FBI's release of information to four other federal agencies does not violate a liberty interest). Therefore, plaintiff's suggestion that his personnel files may be publicly available is incorrect as a matter of law.

---

[3] Plaintiff argues that Cheney is distinguishable because plaintiff in that case had consented to the disclosure. The language cited above, however, is not conditioned on consent. Moreover, there is no allegation in the complaint alleging, much less challenging, any distribution to other federal agencies. Instead, he only makes allegations regarding disseminations made to government contractors.

Finally, even if the reason for his termination were available to the public, the CIA "did not make any charge against him that might seriously damage his standing and associations in the community." Bd. of Regents v. Roth, 408 U.S. at 573. As in Roth, the CIA here did not base its termination decision "on a charge, for example, that he had been guilty of dishonesty or immorality." Id. Instead, the only ground cited for the termination of plaintiff's employment was the "convenience of the government." 1st Am. Compl. ¶ 12.

Thus, contrary to plaintiff's suggestion (Pl. Opp. at 9-10), this case is not analogous to circumstances in Doe v. U.S. Dep't of Justice, 753 F.2d 1093 (D.C. Cir. 1985). In that case, the Department of Justice ("DOJ") fired an attorney on the grounds of unprofessionalism and dishonesty. Specifically, DOJ alleged that the attorney had been disorderly, loud and possibly drunk during discussion with another DOJ attorney, expert witnesses and opposition witness, and that she "consumed beer during a deposition and had encouraged others, including the deponent, to drink." Id. at 1096. The formal memorandum of termination also stated that she had lied to her immediate supervisor and the Acting Assistant Attorney General by denying the incidents. Id. at 1097.

Accordingly, plaintiff cannot base his deprivation of liberty claim on any purported statement regarding his termination.

**B.      Plaintiff Cannot Show that He Was Deprived of a Liberty Interest in Connection with the Purported Disclosures to Government Contractors.**

Plaintiff also cannot establish a liberty interest based upon purported statements made later by the CIA to government contractors when they requested to transfer or renew his security clearance. As previously explained, this claim is insufficient to state a liberty interest for at least three reasons: (1) the fact that the CIA could not confirm his true identity as a CIA employee or the

extent to which he possesses security clearances is not a change in status but simply a reflection of the fact that he was a covert employee, (2) even if the CIA had made statements suggesting that his security clearance had been denied or revoked, he cannot meet the "reputation-plus" prong because such statements do not impugn the plaintiff's moral character or reputation, and (3) plaintiff cannot meet the "stigma or disability" prong because plaintiff has no right to employment in the national security arena or to a security clearance. Def. Mem. at 16-20.

Plaintiff makes no attempt to meet the "reputation-plus" prong. Instead, he bases his claim solely on the "stigma or disability" prong of the liberty test, namely that the purported statements to the government contractors foreclosed his ability to obtain employment requiring a security clearance. In his opposition, plaintiff tries to retract the allegation made in his complaint that the CIA files had failed to "denote his true employment status with the CIA and the extent to which he possesses a security clearance," 1st Am. Compl, ¶ 75, by submitting a declaration from his attorney stating that "the contractors with whom [plaintiff] attempted to, or did temporarily, secure employment with were invariably aware of his prior covert relationship with the CIA." Zaid Decl. ¶ 8. His attorney further states that "I am not aware of any employment lost by Peter B. that occurred because the contractor was unable to verify a prior covert relationship between the CIA and Peter B." Id. ¶ 10. As explained infra at 21-23, consideration of this declaration is inappropriate because in ruling on a Fed. R. Civ. P. 12(b)(6) motion, a court may only consider the factual allegations made in the complaint. Gustave-Schmidt v. Chao, 226 F. Supp.2d 191, 196 (D.D.C. 2002). In any case, plaintiff makes no attempt to reconcile these new allegations with the actual allegations made in his complaint. If the contractors were able to verify his true status as a CIA employee, then plaintiff's allegation that the CIA's records failed "to denote his true employment status with the CIA and the

extent to which he possesses a security clearance" makes no sense.[4]  Plaintiff cannot have it both ways.

In any case, even if the alleged problem was not the inability to verify his true status, but the alleged problems with his security clearance, such claims are insufficient to meet the "stigma or disability" prong of the liberty test.  While the Supreme Court has stated that a liberty interest includes "the right to engage in any of the common occupations of life," Roth, 408 U.S. at 572, a job requiring a security clearance is not such a job.  Courts have specifically held that an individual has neither a property or liberty interest in such a job.  Jones v. Department of Navy, 978 F.2d 1223, 1226 (Fed. Cir. 1992); Dorfmont v. Brown, 913 F.2d 1399, 1403-04 (9th Cir. 1990), cert. denied, 499 U.S. 905 (1991).[5]  In Dorfmont, 913 F.2d at 1403, the court rejected plaintiff's claim that revocation of her security clearance deprived her of the ability to practice her chosen profession, since without it she could no longer obtain employment with a defense contractor.  The court found that "[t]he ability to pursue such employment stands on precisely the same footing as the security

_____

[4]  Plaintiff also attaches a copy of an e-mail purportedly received from a government contractor.  See Exhibit 1 to Pl. Opp.  While this e-mail should not be considered, there is nothing in the e-mail to suggest that he did not receive the employment because of security issues.  Instead, the e-mail states that additional research found that there were "some inconsistencies in what you provided and what is a matter of public record."  Id.  If anything, this statement appears to suggest that there was a problem with the inability to verify information which he had given the contractor.

[5]  In his opposition, plaintiff misquotes Greene v. McElroy, 360 U.S. 474, 492 (1959) as stating that "revocation of a security clearance possibly implicates a Fifth Amendment liberty interest where action has seriously affected, if not destroyed, plaintiff's ability to obtain employment [in his chosen career.]" Pl. Opp. at 12.  The actual quote from the decision is that "Respondents admit, as they must, that the revocation of a security clearance caused petitioner to lose his job with ERCO and has seriously affected, if not destroyed, his ability to obtain employment in the aeronautical field."  Greene, 360 U.S. at 492.  In that case, the Supreme Court declined to reach that due process issue.

clearance itself. If there is no protected interest in a security clearance, there is no liberty interest in employment requiring such clearance." Id. Therefore, even if a plaintiff was precluded from obtaining employment in the area of national security, he has not been deprived of a liberty interest.

In his opposition, plaintiff tries to rebut this argument by citing to Kartseva v. Dep't of State, 37 F.3d 1524 (D.C. Cir. 1994), involving a Russian translator who had worked for a private contractor (Statistica) on a Department of State contract. Pl. Opp. at 12.[6] Contrary to plaintiff's suggestion, that case did not involve a security clearance. Instead, all of the work under the contract was "unclassified." 37 F.3d at 1526. Although the job did not require a security clearance, the State Department required employees of contractors to receive a background check. Id. As a result of the background check, the State Department "informed Statistica that Kartseva was 'ineligib[le] for assignment to a DOS contract or project." Id. Based on that communication, Statistica terminated her employment. Ms. Kartseva then brought a suit alleging that she had been deprived of a liberty interest because the State Department's letter automatically excluded her from working on other contracts involving the State Department and broadly precluded her from continuing her chosen career as a Russian translator. The court found that "[t]he present record [was] cloudy as to the

_____

[6] Plaintiff's reliance on Ranger v. Tenet, 274 F. Supp. 2d 1 (D.D.C. 2003), is also misplaced. The CIA revoked a security clearance because there were "doubts regarding [his] honesty, trustworthiness, reliability, and willingness to comply with rules and regulations." Id. at 4. As a result, he lost his job with a government contractor. Subsequently, the CIA undertook a re-examination of the record and determined that he was eligible for a security clearance. Id. Accordingly, the issue of whether a plaintiff could state a liberty interest based on preclusion from jobs requiring a security clearance was not present in that case. Instead, the court based its decision on plaintiff's allegation under the reputation-plus prong of the liberty test. While the court acknowledged that a denial of a security clearance by itself did not impugn a plaintiff's reputation, it found that disclosure of the information in his file regarding his alleged dishonesty and trustworthiness to the public might state a claim based on damage to his reputation. Id. at 8-9. Here, plaintiff does not allege that any such accusations against him.

extent of the State disqualification" (id. at 1528) because it was not clear from the State Department memorandum whether it "refers only to the Statistica contract from which Kartseva was removed, to all Statistica contracts with State, or, indeed to *any* State contract." Id. at 1530. The court further found that the findings made by the background check might disqualify her from other government jobs because the Federal Personnel Manual "requires that investigations be conducted on all persons entering Federal civilian service." Id. at 1529 n. 20. The court, therefore, remanded the case to the district court for limited discovery on the scope of the disbarment and the extent to which the disqualification affected Ms. Kartseva's ability to pursue her vocation as a Russian translator.

The facts here are not at all analogous to the facts in Kartseva. In this case, plaintiff is not alleging that the CIA has barred him from working on any unclassified contracts. Instead, he only alleges that statements made by unnamed CIA employees precluded him from obtaining employment on government contracts requiring a security clearance. But, as the courts have recognized, allegations that one is precluded from jobs requiring a security clearance are not sufficient to state a deprivation of a liberty interest. Therefore, plaintiff cannot state a due process claim based on a deprivation of his liberty interest either with respect to his termination or the purported statements made to government contractors.[7]

---

[7] In his opposition, plaintiff argues that the Court should allow him to take discovery on his due process claims. None of the cases cited by plaintiff, however, provide a basis for discovery. As previously explained, this case is not analogous to the facts in Kartseva. Plaintiff's suggestion that discovery is appropriate because portions of the regulations dealing with "Contract Employees" is redacted as classified is also incorrect. Pl. Opp. at 16 n.8. Those regulations deal with the definition of a contract employee and his claim that he was a staff employee, not a contract employee (Count I). They have no bearing on his due process claims based on a deprivation of a purported liberty interest. He claims that even though CIA attached the termination regulations effective at the time of his termination, prior regulations might be relevant to his liberty claim. This claim has no basis because a liberty interest "implicates [an employee's] post-employment reputation," not any right to continued employment with the

## IV.    PLAINTIFF'S CLAIMS UNDER THE PRIVACY ACT SHOULD BE DISMISSED.

### A.    Plaintiff's Privacy Claims Are Not Pled With Sufficient Details

Plaintiff has failed to plead his Privacy Act claims with sufficient details to withstand a motion to dismiss. Def. Mem. at 21-22. 24. He simply alleges that the CIA terminated his employment with the CIA "in a manner that was derogatory to his reputation" (1st Am. Compl. ¶ 76) and that, in response to inquiries from unspecified government contractors to transfer or renew his security clearance, the CIA "impl[ied] derogatory information existed that would preclude the granting of a security clearance." 1st Am. Complaint, ¶ 73. He does not identify (1) the alleged inaccurate information,[8] (2) the files which contain the alleged inaccurate information, or (3) to whom and when CIA allegedly disseminated the information. Such vague claims are insufficient. Flowers v. The Exec. Office of the President, 142 F. Supp. 2d 38, 46-47 (D.D.C. 2001).

In his opposition, plaintiff seeks to justify his vague claims by arguing that a "more liberal and elastic construction of the pleading requirement" is needed in "cases involving classified information." Pl. Opp. at 18, citing Doe v. Goss, 2007 U.S. Dist. LEXIS 2708, at *30 (D.D.C. 2007). The allegations made by the plaintiff in Doe v. Goss are, however, more detailed and specific than the claims here. In that case, unlike here, plaintiff alleged that he had been the subject of two investigations: (1) a counter-intelligence investigation into allegations that he had sex with a female asset, and (2) an Office of Inspector General investigation into allegations that he had unlawfully diverted to his own use money provided to him for payment to human assets. Id. at * 5. He alleged

---

agency. Doe v. U.S. Dep't of Justice, 753 F.2d at 1102.

[8] As previously noted, the only "inaccuracy" alleged in the complaint was that CIA failed to denote his true status as an agency employee, but that alleged "inaccuracy" simply reflects the covert nature of his employment. See Def. Mem. at 23; supra at 9.

that these claims were inaccurate and that information related to these inaccuracies "exist in his Official Personnel File, Couunter-Intelligence [sic] Center file, Office of Medical Services File, Center for CIA Security File, and other CIA files." Id. (citing 2d Am. Compl., ¶ 37). He further alleged that the Counter-Intelligence Center placed him on paid and administrative leave and withheld his promotion to a GS-15 as a result of its investigation. Id. He also alleged that shortly after he met with OIG investigators regarding the diversion of funds, the CIA notified him that his employment was terminated. Id. Based on these allegations, court concluded that plaintiff had "identified the files containing the inaccurate records, as well as the general subject matter of the records," and that it was thus were sufficient to withstand a motion to dismiss. Id.

Unlike that case, plaintiff has not alleged that he was the subject of any specific investigations. Nor has he alleged that the CIA made any specific charges or accusations against him. Indeed, he alleged that the CIA told him that there were "no security clearance issues or concerns" within his files. 1st Am. Compl. ¶ 20. Moreover, while he claims that he has "clearly identified the relevant record as being his own personnel file" (Pl. Opp. at 19), the paragraph of the complaint cited by plaintiff contains no mention of his personnel file. Instead it simply refers to "his CIA files." 1st Am. Complaint, ¶ 20.

Plaintiff cannot escape the requirement to plead his claims with some factual specificity by claiming that he should be allowed an opportunity to take discovery. As courts have recognized,

> the price for entry, even to discovery, is for the plaintiff to allege a
> *factual* predicate concrete enough to warrant further proceeding,
> which may be costly and burdensome. Conclusory allegations in a
> complaint, if they stand alone, are a danger sign that plaintiff is
> engaged in a fishing expedition.

DM Research v. College of American Pathologists, 170 F.3d 53, 55 (1st Cir. 1999). Accord Gooley

14

v. Mobil Corp., 851 F.2d 513, 515 (1st Cir. 1988) (the factual allegations must be specific enough to justify "drag[ging] the defendant past the pleading threshold").

The cases cited by plaintiff in which the court permitted some discovery on Privacy Act claims are not analogous. In those cases, unlike here, plaintiff had at least identified the alleged inaccurate information. For example, in Tripp v. Department of Defense, 219 F. Supp.2d 85, 86 (D.D.C.2002), plaintiff detailed eleven different alleged disclosures, specifically describing the records disclosed, the person who made the disclosure, the person to whom the disclosure was made, and even the date of the disclosure. Similarly, in Murphy v. United States, 167 F. Supp.2d 94, 95 (D.D.C. 2001), plaintiff alleged that the inaccurate records related to an investigation into allegations that he assaulted his supervisor.[9] Accordingly, plaintiff's suggestion that he should be allowed to engage in a "fishing expedition" based on vague or unspecific Privacy Act violations should not be allowed.

---

[9] See also Scarbough v. Harvey, 2007 U.S. Dist. LEXIS 36952 (D.D.C. May 22, 2007) (complaint alleged that defendants had disseminated inaccurate information about fraud charges against him in criminal alert notice distributed to other agencies and banks); Hutchinson v. Tenet, 2003 U.S. Dist. LEXIS 26182 (D.D.C. Aug. 28, 20003) (plaintiff alleged that agency failed to maintain accurate records by omitting her account of a false correction incident from her personnel file); Alexander v. FBI, 194 F.R.D. 316, 319 (D.D.C.2000) (allegation that FBI provided White House files of political appointees of prior Administrations); Melius v. National Indian Gaming Commission, 2000 U.S. Dist. Lexis 22747 (D.D.C. July 21, 2000) (complaint alleged that inaccurate information regarding an application for a gaming management contract); Leighton v. CIA, 2007 U.S. Dist. LEXIS 26667, 4-6 (D.D.C. April 11, 2007) (the complaint listed eleven specific alleged errors in the record relating to his security clearance) (a copy of plaintiff's complaint is attached hereto as Exhibit A). Sirmans v. Caldera, 27 F. Supp.2d 248 (D.D.C. 1998), is also not on point. While the court may have allowed discovery on other claims, the court actually dismissed the Privacy Act claims. Id. at 250.

**B.**    **Even if Plaintiff's Privacy Claims Were Deemed To Be Plead With Sufficient Details, They Still Fail to State A Claim.**

**1.**    **Plaintiff's Claim That CIA Violated 5 U.S.C. § 552a(e)(2) Should Be Dismissed.**

Even if this Court were to find that plaintiff pled his Privacy Act claims with sufficient detail, plaintiff's claim that CIA violated 5 U.S.C. § 552a(e)(2) should be dismissed for failure to state a claim. To state a claim under subsection (e)(2), plaintiff must show that the CIA failed to collect information to the greatest extent practicable directly from him and as a result made it made an adverse determination about his "rights, benefits, and privileges under Federal programs." 5 U.S.C. § 552a(e)(2). In this case, the only two alleged adverse determinations made by the CIA were his termination and the purported determinations made regarding his security clearance. Def. Mem. at 24-27. Plaintiff cannot state a claim based on either of those bases.

If the alleged adverse determination was his termination, the claim is (1) barred by the two year statute of limitations, 5 U.S.C. § 552a(g)(5), because the termination occurred more than four years before he filed the complaint, and (2) plaintiff is not permitted to bring claims under the Privacy Act that would effectively circumvent the statutory scheme that Congress enacted to preclude review of the CIA's personnel decisions. Def. Mem. at 24-25.

Plaintiff argues that his claim is not barred by the statute of limitations because he did not become aware of the "misrepresentation of information" concerning him "until the rescission of the offer of employment from the contractors which occurred as recently as 2006." Pl. Opp. at 20. This argument, however, does not withstand scrutiny because there are no allegations in the complaint suggesting that any of the purported statements made to the contractors related to his termination. Instead, his complaint alleges that the statements related to his security clearance. 1st Am.

16

Complaint, ¶ 73. He has not alleged that his termination related to any security concerns. Indeed, he alleges that at the time he was terminated, he "possessed a TS/SCI clearance that was still active." Id. ¶ 20.

Moreover, even if a Privacy Act claim based on his termination was not barred by the statute of limitations, it is precluded by the CSRA. Def. Mem. at 24. In his opposition, plaintiff argues that his Privacy Act is not precluded by the CSRA "so long as the 'harm alleged was actually caused by the alleged violation.'" Pl. Opp. at 21 (quoting Doe v. Goss, 2007 U.S. Dist. LEXIS 2708 * 3, citing Hubbard v. U.S. E.P.A. Adm'r, 809 F.2d 1, 5 (D.C. Cir. 1986)). This argument is based on a misreading of the court's decision in Hubbard. While there is language in the decision suggesting that "the Privacy Act permits a federal job applicant to recover damages for an adverse personnel action *actually caused* by inaccurate or incomplete record," the Court of Appeals also holds that the CSRA "deprives the district court of jurisdiction to review prohibited personnel practices" because they are "not normally reviewable by any court." Hubbard, 809 F.2d at 5. As the Court of Appeals explained, "[s]ince Congress specifically chose to oust the district courts of jurisdiction to review government personnel practices, it would be anomalous to construe the pre-existing Privacy Act to grant the district court power to do indirectly that which Congress precluded directly." Id. Yet that is exactly what plaintiff tries to do here. As explained in Def. Mem. at 7, Congress explicitly excluded CIA employees from seeking review of personnel decisions under the CSRA. The CSRA's exclusion of particular categories of employees from its remedial provisions was a "manifestation of a considered congressional judgment that they should not have statutory entitlement to review for adverse action of the type governed by [the CSRA]." United States v. Fausto, 484 U.S. 439, 448-49

17

(1988). See also Kleiman v. Dep't of Energy, 956 F.2d 335, 338 (D.C. Cir. 1992).[10]  This is consistent with 50 U.S.C. § 403-4a(e)(1), which grants the Director of the Central Intelligence Agency unreviewable discretion to terminate an employee. Webster v. Doe, 486 U.S. 592, 600 (1988). Thus, even if the language in Hubbard holds that Privacy Act allows the district court to review adverse personnel decisions in some cases, it does not suggest that it permits the district court to review termination decisions where, as here, other statutes preclude review. Indeed, it suggests exactly the opposite.[11]

Plaintiff also cannot base his Section 552a(e)(2) claim on the purported determination made regarding his security clearance for at least two reasons. First, even if a decision to revoke a security clearance could be considered an adverse decision, he does not allege that the CIA ever actually revoked his security clearance. Instead, he claims that the CIA impeded the requests by unnamed

---

[10] In its opposition, plaintiff also argues that CSRA would only preclude Privacy Act claims in which "the aggrieved individuals were afforded some manner of administrative due process and seek to use the Privacy Act as a mechanism for circumventing established regulatory or statutory procedures." Pl. Opp. at 20. However, there is nothing in the decisions cited by plaintiff suggesting such a limitation. The key is not whether plaintiff was afforded an opportunity to seek administrative review, but whether plaintiff's Privacy Act claim is attempting to circumvent another statute limiting review of the personnel decision. To the extent that plaintiff is basing his Privacy Act claim on the adverse termination, that is exactly what he is doing here.

[11] In his reach to find some argument against preclusion, plaintiff argues that he is "relying on the constitutional claim that the CIA deprived him of a protected liberty interest by publicly disseminating inaccurate and/or derogatory information that damaged his reputation and resulted in his termination from the CIA." Pl. Opp. at 21. This argument, however, merely attempts to convert his due process claim into a Privacy Act claim. In any case, as explained previously, plaintiff cannot state a liberty interest with respect to his termination. See supra at 6-8. Plaintiff's suggestion that Webster v. Doe, 486 U.S. 592 (1988), did not reach the constitutional issue of whether an employee could state a constitutional claim based on his termination ignores the fact that on remand, the Court of Appeals specifically found that an employee could not state a due process claim. Doe v. Gates, 981 F.2d 1316, 1321 (D.C. 1993).

18

government contractors to transfer or renew his security clearance because the CIA's records did not denote his true identity as a former CIA employee. 1st Am. Compl. ¶ 75. But, as previously explained, that is not an adverse action based on inaccurate information or failure to collect information directly from the plaintiff; it is simply a reflection of the classified nature of his employment. Def. Mem. at 18. In his opposition, plaintiff attempts to avoid this problem by submitting a declaration from his attorney stating that plaintiff has told him that the contractors "were invariably aware of his prior covert relationship with the CIA." But, as explained elsewhere, this attempt to "amend" his complaint with a hearsay statement is inappropriate. See infra at 22. In any event, plaintiff cannot have it both ways, claiming that the CIA failed to tell them his status as a former CIA employee but then asserting that they already knew it.

Second, plaintiff's claim that CIA impeded the transfer of his security clearance is barred by the statute of limitations because his security clearance could only be "reapproved" within two years after his termination, Executive Order No. 12968, § 2.3(d). Def. Mem. at 26. Thus, to the extent plaintiff is basing his claim on a purported decision by CIA not to reapprove his security clearance, the claim had to have arisen within two years of the date of his termination (October 3, 2002), and had to be filed within two years thereafter under the statute of limitations for Privacy Act claims, 5 U.S.C. § 552a(g)(5). Plaintiff's claim is barred because he did not assert his Privacy Act claim until January 12, 2007. Plaintiff makes no attempt to refute this point in his opposition.[12]

---

[12] In his declaration, plaintiff's attorney alleges that even if plaintiff's security clearance had lapsed, it would have been "a simple matter, for a contractor to sponsor him for a renewed clearance." Zaid Decl. ¶ 4. He states that he suspects that this may not have done here because the CIA "whispered" to the contractor that there was something negative his files. Id. He does not base this assertion on any statements purported made regarding the plaintiff. Instead, he bases it on allegations made by other clients on what allegedly happened in their cases Speculations based on what may have happened to others, however, are not sufficient. Flowers

Hence, no matter how plaintiff tries to frame his claim, he cannot state a claim under Section 552a(e)(2).

**B.      Plaintiff's Claims That CIA Violated 5 U.S.C. §§ 552a(e)(5) and (e)(6) Should Be Dismissed.**

Even if the allegations were deemed to be sufficiently detailed, plaintiff fails to state a damage claim under 5 U.S.C. § 552a(e)(5) and (e)(6). Like his other Privacy Act claims, he alleges the records were inaccurate or incomplete because they did not "denote his true employment status with the CIA and the extent to which he possesses a security clearance." 1st Am. Compl. ¶ 88. But as previously explained, this assertion, however, ignores the classified nature of his employment with the CIA. The fact that the CIA could not confirm "his true identity" as a CIA employee is not inaccurate information; it is simply a recognition of the classified nature of his employment record as a covert contract employee.

In his opposition, plaintiff tries to obscure to this point by alleging that there is no exception in the Privacy Act for classified information. Pl. Opp. at 23. This misses the point. The issue is not whether any classified information is inaccurate. Both plaintiff and defendant agree that plaintiff was a covert CIA employee and that his relationship with the CIA is still classified. See Declaration of Mark Zaid, ¶ 4 (filed in support of plaintiff's motion to file under the name of "Peter B."). Instead, defendants' point is that the CIA's failure to confirm this admittedly classified fact to others cannot form the basis for an inaccuracy claim under the Privacy Act. Plaintiff does not refute this point.

While plaintiff now tries to retract his allegation that the CIA records are inaccurate because

---

v. The Executive Office of the President, 142 F. Supp.2d at 46 (claim that confidential information was released about others is not sufficient to state a claim under the Privacy Act claim that inaccurate confidential information was distributed about plaintiff).

they do not denote his true status as a CIA employee and the extent to which he possessed a security clearance, he cannot amend his complaint by filing a declaration by his counsel. His ability to state a claim must be based on the allegations in his complaint, not on the allegations made by his attorney in a declaration. Accordingly, plaintiff's claims in Counts VII and VIII should be dismissed for failure to state a claim.

## IV.    PLAINTIFF CANNOT SUPPLEMENT THE ALLEGATIONS IN HIS COMPLAINT BY A DECLARATION OR OTHER MATERIAL OUTSIDE THE PLEADINGS.

This Court should not consider the declaration of his attorney and the copy of a e-mail attached to plaintiff's opposition. Plaintiff attempts to justify his reliance on these documents by citing cases holding that a court may rely on documents beyond the pleading to resolve a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). Pl. Opp. at 5. Plaintiff's reliance on those cases is misplaced because plaintiff does not rely on the documents to resolve any jurisdictional issue.[13] Instead, plaintiff relies upon the documents to try to refute defendants' argument that plaintiff's complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. As plaintiff acknowledges, a district court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice" in deciding a Fed. R. Civ. P. 12(b)(6) motion. Pl. Opp. at 6 (citing Gustave-Schmidt v. Chao, 226 F. Supp.2d at 196).[14]

---

[13] The only jurisdictional issues raised in defendants' motion to dismiss was that Court lacked jurisdiction of the APA claims (Counts I - IV) and the Privacy Act claims (to the extent that they are based on his termination) because the Civil Service Reform Act provides the exclusive statutory scheme for reviewing personnel actions. See supra at 2-3, 17-18.

[14] Plaintiff seeks to avoid this limitation by suggesting that the court may consider matters outside the pleadings and thereby convert defendants' Rule 12(b)(6) motion into a motion for summary judgment. Pl. Opp. at 6-7. While it may be appropriate for a court to treat a

As courts have repeatedly recognized, plaintiff cannot amend his complaint in his brief or through declarations to avoid a motion to dismiss. Car Carriers Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984). Yet, that is exactly what plaintiff is trying to do here. While the complaint makes general allegations that CIA provided government contractors with inaccurate information about him (1st Am. Compl. ¶ 21), the only inaccurate information actually identified in the complaint is the CIA's purported failure to "denote his true employment status with the CIA and the extent to which he possesses a security clearance." Id. ¶75. As defendants explained in their motion to dismiss, the fact that the CIA could not confirm his employment is not an inaccurate record: it simply a recognition of the classified nature of his employment record as a covert contract employee. Def. Mem. at 18. The declaration by plaintiff's attorney tries to "correct" this flaw in plaintiff's claims by asserting that plaintiff "has made [him] aware that the contractors with whom he attempted to, or did temporarily secure employment with were invariably aware of his prior covert relationship with the CIA" and that his counsel is not "aware of any employment lost by Peter B. that occurred because the contractor was unable to verify a prior covert relationship between the CIA and Peter B." Zaid Decl. ¶¶ 8, 10.[15] Nowhere in plaintiff's opposition, however, does he attempt to

_____

defendant's motion as a motion for summary judgment in cases in which that defendant attaches a declaration supplementing the allegations in the complaint and the plaintiff files a corresponding declaration responding to those new allegations, that is not at all what happened here. For purposes of the motion to dismiss, defendants are assuming that the factual allegations in the complaint are true. The only documents attached to defendants' motion were CIA regulations (see Exhibits 1-3 to Declaration of Linda Dove) of which the Court may take judicial notice. Citizens for a Better Environment-California v. Union Oil Co. of California, 861 F. Supp. 889, 896-97 (N.D. Cal. 1994). These termination and PEB regulations attached by defendant were referenced in plaintiff's own complaint. 1st Am. Compl. ¶ 18.

[15] Even if it were appropriate to consider such matters beyond the pleadings, the declaration should be excluded under Fed. R. Evid. 602 and 802 because the statements made by plaintiff's counsel are not based on personal knowledge but are hearsay.

reconcile this statement with the allegation made in the complaint. Indeed, he cannot. If the contractors were able to verify this employment with the CIA, the allegations in the complaint regarding inaccurate records would make no sense.

The declaration and copy of the e-mail should, therefore, not be considered by the Court in ruling on defendants' motion to dismiss.

## V.    THIS CASE SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF VIRGINIA PURSUANT TO 28 U.S.C. § 1404.

This case should be transferred to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404. Even if the addition of the Privacy Act claims makes venue proper in the District of Columbia, transfer is appropriate because neither the CIA nor the plaintiff reside in the District and none of the events giving rise to plaintiff's claims occurred in the District. Def. Mem. at 28-29.

In its opposition, plaintiff argues that transfer is not appropriate because the Court must afford deference to plaintiff's choice of forum. Pl. Mem. at 26. But, as plaintiff acknowledges, that deference is "is lessened when plaintiff's forum choice lacks meaningful ties to the controversy and [has] no particular interest in the parties or the subject matter." Id. (quoting Southern Utah Wilderness Alliance v. Norton, 315 F. Supp. 2d 82, 86 (D.D.C. 2004). In this case, plaintiff presents no valid arguments to demonstrate that the District of Columbia has any meaningful ties to the controversy or the parties in this case.

First, plaintiff tries to find some significance in the fact that the Privacy Act specifically allows for venue in the District of Columbia. Pl. Opp. at 27. But, the fact that the Privacy Act allows for venue in this district is a neutral factor because the Privacy Act also allows for venue in the Eastern District of Virginia, where the records are located. 5 U.S.C. § 552a(g)(5). Indeed, 28

U.S.C. § 1404(a) presumes that venue is proper both in the district in which it is filed and the district in which it requested to be transferred. Accordingly, plaintiff cannot simply use the fact that venue is proper in this district to show that transfer is not appropriate.

Second, plaintiff claims that the courts "have found venue to be appropriate in D.C. in cases involving the CIA due to the extensive amount of work done in DC by the DCI." Pl. Opp. at 27. The cases cited by plaintiff, however, were decided prior to the passage of the National Security Intelligence Reform Act of 2004, 50 U.S.C. § 402, et seq., which transferred significant portions of the Director of the CIA to the Director of National Intelligence. In any case, even if those cases suggest that the CIA may have some ties to the District of Columbia, they do not provide any basis for finding that the District of Columbia has any "meaningful ties to the controversy" in this case. Plaintiff has not alleged that any of the events upon which his claims are based took place in the District of Columbia. In his opposition, plaintiff tries to obscure this point by citing to the allegation in his complaint that "[u]pon information and belief events pertaining to Peter B. took place within this jurisdiction." Pl. Opp. at 27 (citing 1st Am. Compl. ¶ 5). This allegation regarding "events pertaining to Peter B." apparently related to the allegation made later in the complaint that "[u]pon information and belief, Peter's B. situation, included congressional interaction and publicized legal actions that have initiated upon his behalf or that of his family, have led to the inclusion of the [Director of the CIA] in office at the time to be briefed on relevant matters and became involved in the decision-making process how best the CIA should react." 1st Am. Compl. ¶ 14. That allegation, however, does not suggest that the events which formed the basis for the claims occurred in the District. Instead, it only speculates that subsequent plans on how to react to Congressional inquiries and legal actions occurred in the District.

24

Plaintiff also argues that public interest lies in keeping the case in the District Court for the District of Columbia because it has "considerable familiarity" with the Privacy Act. Pl. Opp. at 29. But the Eastern District of Virginia also has experience with Privacy Act claims. See, e.g., Willaims v. Farrior, 334 F. Supp.2d 898 (E.D. Va. 2004); Aquinio v. Stone, 768 F. Supp. 529 (E.D. 1991).

Accordingly, this action should be transferred to the Eastern District of Virginia where the defendant CIA resides and where it would appear from the complaint that the actions giving rise to plaintiff's complaint occurred.

## CONCLUSION

For the above stated reasons, this Court should grant defendant's motion to dismiss or transfer it to the Eastern District of Virginia.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SUSAN K. RUDY
Assistant Branch Director

s/Marcia K. Sowles
MARCIA K. SOWLES, DC Bar No. 369455
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7114
Washington, D.C.  20530
Tel.: (202) 514- 4960
Fax: (202) 616- 8470
E-mail:  marcia.sowles@usdoj.gov

Attorneys for CIA and General Michael V. Hayden

25

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARIAN LEIGHTON,                    )
                                    )
        Plaintiff,                  )
                                    )    No. 04cv00812 (LFO)
    v.                              )
                                    )
CENTRAL INTELLIGENCE AGENCY,        )
                                    )
                                    )
                                    )
        Defendant.                  )
_____    )

## SUPPLEMENTAL COMPLAINT

For her Complaint against the Central Intelligence Agency (the "Agency"), Dr. Marian

Leighton ("Dr. Leighton"), by undersigned counsel, states as follows:

### INTRODUCTION

1. This action is brought under the Privacy Act, 5 U.S.C. § 552a, to seek relief from the Central

    Intelligence Agency's (the "Agency") decision under 5 U.S.C. § 552a (d)(3) not to remove

    factually inaccurate information from Dr. Leighton's records in accordance with her request

    pursuant to 5 U.S.C. § 552a (d)(2).

2. Based on inaccurate information in Dr. Leighton's record, the Agency wrongfully revoked

    her security clearance and wrongfully terminated her contract with the Agency.

### JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1337 (federal question) and the Privacy

    Act, 5 U.S.C. § 552a(g)(1).

4. Venue is proper in this court district under 5 U.S.C. § 552a(g)(5).

## PARTIES

5. Dr. Leighton, a United States citizen, resides in Reston, Virginia.

6. The Central Intelligence Agency is an agency of the United States government, and is an "agency" for purposes of the Privacy Act, 5 U.S.C. § 552(f).

## FACTS

7. In April 2002, Dr. Leighton and the Agency entered into a contract (the "Contract") for a term of one year for Dr. Leighton to render personal services.

8. The Contract required that Dr. Leighton have a security clearance.

9. On June 3, 2002, during the term of the Contract, the Agency wrongfully revoked Dr. Leighton's security clearance.

10. Dr. Leighton's security clearance was revoked based on allegations that she had admitted that she had disclosed classified information to a "member of the media," in violation of the Agency's security regulations. In fact, however, Dr. Leighton never did such a thing, and never admitted or stated that she had done such a thing.

11. Because Dr. Leighton's Contract required that she have a security clearance, the Agency terminated her Contract, during its term, on the date her security clearance was revoked.

12. In revoking Dr. Leighton's security clearance and in terminating her contract, the Agency relied on all or some of the following factually inaccurate statements in its investigative file on Dr. Leighton that the Agency incorrectly attributed to her:

a. That Dr. Leighton had frequent contact with Mr. Vincent Cannistraro, who was the recently-retired Chief of Operations at the CIA's Counterterrorism Center. That was not true.

b. That Dr. Leighton had dinner with Mr. Cannistraro every three months. That was not true.

c. That Dr. Leighton had dinner with Mr. Cannistraro three or four times during the relevant time period. That was not true.

d. That "[Dr.] Leighton stated that although she has known Mr. Cannistraro since the early 1990's, they seldom spoke or socialized until she began working in [    ] (December 2000).  When asked, [Dr.] Leighton failed to explain what motivated the change in their relationship.  She did state, however, that she used her [    ] telephone to contact Mr. Cannistraro socially on approximately 10 occasions over the past year. She also admitted meeting Mr. Cannistraro and his wife for dinner on approximately four occasions[.]" That was not true; Dr. Leighton never made those statements. Nor would they have been true if she had made them.

e. That Dr. Leighton stated that "While at dinner, [Dr. Leighton] recalled having discussions with Mr. Cannistraro on such topics as United States efforts to locate UBL; al-Qa'ida's infiltration and presence in the US, Indonesia, Malaysia, the Philippines, Yemen and Somalia; the US war efforts in Afghanistan; and the President's policies on terrorism[.]" That was not true; Dr. Leighton never made those statements.

-3-

f.  That "[Dr. Leighton] commented that Cannistraro would be the one she would

contact if she ever wanted to get in touch with anyone at ABC News[.]" That was not

true; Dr. Leighton never made that statement.

g.  That "[Dr. Leighton] advised that it was 'quite conceivable' that Cannistraro has

asked her questions to seek confirmation from her. Subject believed she may have

provided him with sensitive information." That was not true; Dr. Leighton never

made those statements. Nor did she believe any such thing.

h.  That "[Dr. Leighton] acknowledged she should have discussed her contact with

Cannistraro during the [polygraph] pretest interview. She viewed him as a 'media

person' and knew he was being paid by ABC News." That was not true; Dr.

Leighton never made those statements. She did not view Mr. Cannistraro as a "media

person" and did not believe that she should have discussed her contact with him

during the pretest interview.

i.  That "[Dr. Leighton] admitted Cannistraro has asked for her opinions on a number of

things. She questioned whether Cannistraro may have been trying to confirm

information based on their discussions. She offered the following examples:

1.  "Subject and Cannistraro discussed how the current terrorist problem
    originated. Subject commented that it stemmed from the Iranian hostage
    situation in the early 1980's which, in turn, gave rise to Islamic
    Fundamentalism."

2.  "Subject told Cannistraro the United States should not be focusing on the
    'human rights' of the captured terrorists."

3.  "Subject opined to Cannistraro that the U.S. Government's decision to move
    away from Afghanistan after the Soviets were defeated allowed bin Laden and
    other terrorists to set up camp in that country. If the United States had not
    allowed this to happen, Afghanistan would not be a sanctuary for the terrorists

-4-

today."

4.  "Subject offered her opinions to Cannistraro that Saudi Arabia was not our friend (no specifics provided).

5.  "[redacted]."

6.  "Subject and Cannistraro discussed how Al-Queda has become ensconced in Germany, Belgium, and Scandinavia.  She told him these countries need stricter immigration."

This was not true. Dr. Leighton made no such statements and had no such question in her mind.

j.  That "[Dr. Leighton] claimed not to know of a requirement to obtain permission to engage in contact with a member of the media[.]"  This was not true. Dr. Leighton made no such claim.  Nor would such a claim have been true; Dr. Leighton was well aware of that requirement, and observed it.

k.  That "[Dr. Leighton] admitted it was possible she had discussed terrorism information with [Mr. Cannistraro] that she had read in classified cables."  This was not true. Dr. Leighton made no such statement.

13. Since Dr. Leighton has not been permitted to review a non-redacted version of her record, additional factual inaccuracies may exist in her records.

14. After intra-Agency administrative proceedings in which Dr. Leighton was represented by one of the undersigned attorneys, Dr. Leighton's security clearance was restored by the Agency on November 13, 2003.

15. In announcing its decision to restore Dr. Leighton's security clearance, the Agency stated that "on future security applications and forms she may, insofar as [the June 3, 2002]

-5-

decision [to revoke her security clearance] is concerned, affirm that she has never had her security clearance revoked."

16. The restoration of Dr. Leighton's security clearance was made under the standard that "any doubts regarding an individual having access to classified information must be resolved in favor of national security."

17. The Agency necessarily had concluded that its earlier findings regarding Dr. Leighton's alleged disclosures and admissions were factually incorrect.

18. On April 7, 2004, Dr. Leighton filed a request with the Agency to amend her record, pursuant to subsection (d)(2) of the Privacy Act, 5 U.S.C. § 552a(d)(2).

19. On May 18, 2004, prior to receiving a decision from the Agency on that request, Dr. Leighton filed an action in the United States District Court for the District of Columbia ("District Court") claiming, *inter alia*, that the Agency violated 5 U.S.C. § 552a(d)(2) by failing to amend Dr. Leighton's record, at her request, to expunge factually inaccurate information and 5 U.S.C. § 552a(e)(5) by the Agency's intentional or willful failure to maintain Dr. Leighton's record with accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in a determination

20. On October 6, 2004, during the pendency of this action in the District Court, the Agency denied Dr. Leighton's request to amend and informed her that, pursuant to 32 C.F.R. § 1901.42(c), the Agency would not consider any appeal of that decision.

21. On October 7, 2004, the Agency filed a motion to dismiss the District Court action. The lawsuit was dismissed, without prejudice, on January 18, 2005.

22. On March 2, 2006, Dr. Leighton filed an appeal to the Agency of its October 6, 2004 denial of her request, under 5 U.S.C. § 552a (d)(2), to amend her record

23. The Agency in a June 29, 2006, letter informed Dr. Leighton that her appeal of its October 6, 2004, denial was untimely, but it would consider Dr. Leighton's March 2, 2006 letter "a new request, with attendant appeal rights, for the amendment of records."

24. On August 18, 2006, the Agency denied Dr. Leighton's request to amend her records stating that "[t]he information contained in our official records documents the history, continuity, administrative process and analysis that were used in reaching a decision. The official record is an account of how events transpired and therefore, must remain inviolate." Exhibit 1.

25. On August 29, 2006, in accordance with 5 U.S.C. § 552a (d)(3), Dr. Leighton appealed the Agency's denial of her request to amend her records arguing that the Agency decision would allow it to circumvent the requirements of 5 U.S.C. § 552a(e)(5) to maintain a person's record "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness".

26. The Agency denied Dr. Leighton's appeal to have her record amended on December 19, 2006 based on the same rationale set forth in its August 18, 2006, denial. Exhibit 2.

27. At this time Dr. Leighton has exhausted her administrative remedies under 5 U.S.C. § 552a (d)(3).

## CLAIM FOR RELIEF

### Violation of the Privacy Act, 5 U.S.C. § 552a(d)(3)

28. Dr. Leighton repeats the allegations set forth in paragraphs 1 through 27 of this Complaint as though fully set forth herein.

29. The Privacy Act, 5 U.S.C. § 552a(g)(1)(A), provides for civil remedies where an agency makes "a determination under [5 U.S.C. § 552a ](d)(3) not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection."

30. The Agency in denying Dr. Leighton's request to amend the records in question has decided to continue to include in Dr. Leighton's record factually inaccurate information.

31. The Agency's determination is subject to judicial review under 5 U.S.C. § 552a(g)(1).

32. The Privacy Act, 5 U.S.C. § 552a(g)(2)(A), allows this Court to order the agency to amend Dr. Leighton's records in accordance with her request or in such other way as this Court may direct, and 5 U.S.C. § 552a(g)(2)(B) allows this Court to assess against the Agency reasonable attorney fees and other litigation costs incurred by Dr. Leighton.

## PRAYER FOR RELIEF

WHEREFORE, Dr. Leighton requests that the Court:

(a) ENTER JUDGMENT ordering the agency to amend Dr. Leighton's records in accordance with her request or in such other way as the Court deems appropriate;

(b) AWARD to Dr. Leighton her costs and reasonable attorneys' fees and litigation expenses; and

(c ) GRANT such other and further relief as is just and proper.

Respectfully submitted,

 /s/ Charles H. Carpenter ___
Charles H. Carpenter #432004
Sean P. Bamford, #487556
PEPPER, HAMILTON LLP
600 14th Street, N.W.
Washington, D.C.  20005
(202) 220-1507

Of Counsel:

Stephen M. Block (D.C. Bar No. 438520)
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union Fund
 of the National Capital Area
1400 – 20th Street, NW, Suite 119
Washington, D.C.  20036-5920

Attorneys for Dr. Leighton