# EXHIBIT A

Dockets.Justia.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MARIAN LEIGHTON,** | ) | |
| **Plaintiff,** | ) | **No. 04cv00812 (LFO)** |
| **v.** | ) | |
| **CENTRAL INTELLIGENCE AGENCY,** | ) | |
| **Defendant.** | ) | |

## SUPPLEMENTAL COMPLAINT

For her Complaint against the Central Intelligence Agency (the "Agency"), Dr. Marian Leighton ("Dr. Leighton"), by undersigned counsel, states as follows:

## INTRODUCTION

1. This action is brought under the Privacy Act, 5 U.S.C. § 552a, to seek relief from the Central Intelligence Agency's (the "Agency") decision under 5 U.S.C. § 552a (d)(3) not to remove factually inaccurate information from Dr. Leighton's records in accordance with her request pursuant to 5 U.S.C. § 552a (d)(2).

2. Based on inaccurate information in Dr. Leighton's record, the Agency wrongfully revoked her security clearance and wrongfully terminated her contract with the Agency.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1337 (federal question) and the Privacy Act, 5 U.S.C. § 552a(g)(1).

4. Venue is proper in this court district under 5 U.S.C. § 552a(g)(5).

**PARTIES**

5. Dr. Leighton, a United States citizen, resides in Reston, Virginia.

6. The Central Intelligence Agency is an agency of the United States government, and is an "agency" for purposes of the Privacy Act, 5 U.S.C. § 552(f).

**FACTS**

7. In April 2002, Dr. Leighton and the Agency entered into a contract (the "Contract") for a term of one year for Dr. Leighton to render personal services.

8. The Contract required that Dr. Leighton have a security clearance.

9. On June 3, 2002, during the term of the Contract, the Agency wrongfully revoked Dr. Leighton's security clearance.

10. Dr. Leighton's security clearance was revoked based on allegations that she had admitted that she had disclosed classified information to a "member of the media," in violation of the Agency's security regulations. In fact, however, Dr. Leighton never did such a thing, and never admitted or stated that she had done such a thing.

11. Because Dr. Leighton's Contract required that she have a security clearance, the Agency terminated her Contract, during its term, on the date her security clearance was revoked.

12. In revoking Dr. Leighton's security clearance and in terminating her contract, the Agency relied on all or some of the following factually inaccurate statements in its investigative file on Dr. Leighton that the Agency incorrectly attributed to her:

a. That Dr. Leighton had frequent contact with Mr. Vincent Cannistraro, who was the recently-retired Chief of Operations at the CIA's Counterterrorism Center. That was not true.

b. That Dr. Leighton had dinner with Mr. Cannistraro every three months. That was not true.

c. That Dr. Leighton had dinner with Mr. Cannistraro three or four times during the relevant time period. That was not true.

d. That "[Dr.] Leighton stated that although she has known Mr. Cannistraro since the early 1990's, they seldom spoke or socialized until she began working in [ ] (December 2000). When asked, [Dr.] Leighton failed to explain what motivated the change in their relationship. She did state, however, that she used her [ ] telephone to contact Mr. Cannistraro socially on approximately 10 occasions over the past year. She also admitted meeting Mr. Cannistraro and his wife for dinner on approximately four occasions[.]" That was not true; Dr. Leighton never made those statements. Nor would they have been true if she had made them.

e. That Dr. Leighton stated that "While at dinner, [Dr. Leighton] recalled having discussions with Mr. Cannistraro on such topics as United States efforts to locate UBL; al-Qa'ida's infiltration and presence in the US, Indonesia, Malaysia, the Philippines, Yemen and Somalia; the US war efforts in Afghanistan; and the President's policies on terrorism[.]" That was not true; Dr. Leighton never made those statements.

f. That "[Dr. Leighton] commented that Cannistraro would be the one she would contact if she ever wanted to get in touch with anyone at ABC News[.]" That was not true; Dr. Leighton never made that statement.

g. That "[Dr. Leighton] advised that it was 'quite conceivable' that Cannistraro has asked her questions to seek confirmation from her. Subject believed she may have provided him with sensitive information." That was not true; Dr. Leighton never made those statements. Nor did she believe any such thing.

h. That "[Dr. Leighton] acknowledged she should have discussed her contact with Cannistraro during the [polygraph] pretest interview. She viewed him as a 'media person' and knew he was being paid by ABC News." That was not true; Dr. Leighton never made those statements. She did not view Mr. Cannistraro as a "media person" and did not believe that she should have discussed her contact with him during the pretest interview.

i. That "[Dr. Leighton] admitted Cannistraro has asked for her opinions on a number of things. She questioned whether Cannistraro may have been trying to confirm information based on their discussions. She offered the following examples:

1. "Subject and Cannistraro discussed how the current terrorist problem originated. Subject commented that it stemmed from the Iranian hostage situation in the early 1980's which, in turn, gave rise to Islamic Fundamentalism."

2. "Subject told Cannistraro the United States should not be focusing on the 'human rights' of the captured terrorists."

3. "Subject opined to Cannistraro that the U.S. Government's decision to move away from Afghanistan after the Soviets were defeated allowed bin Laden and other terrorists to set up camp in that country. If the United States had not allowed this to happen, Afghanistan would not be a sanctuary for the terrorists

today."

4. "Subject offered her opinions to Cannistraro that Saudi Arabia was not our friend (no specifics provided).

5. "[redacted]."

6. "Subject and Cannistraro discussed how Al-Queda has become ensconced in Germany, Belgium, and Scandinavia. She told him these countries need stricter immigration."

This was not true. Dr. Leighton made no such statements and had no such question in her mind.

j. That "[Dr. Leighton] claimed not to know of a requirement to obtain permission to engage in contact with a member of the media[.]" This was not true. Dr. Leighton made no such claim. Nor would such a claim have been true; Dr. Leighton was well aware of that requirement, and observed it.

k. That "[Dr. Leighton] admitted it was possible she had discussed terrorism information with [Mr. Cannistraro] that she had read in classified cables." This was not true. Dr. Leighton made no such statement.

13. Since Dr. Leighton has not been permitted to review a non-redacted version of her record, additional factual inaccuracies may exist in her records.

14. After intra-Agency administrative proceedings in which Dr. Leighton was represented by one of the undersigned attorneys, Dr. Leighton's security clearance was restored by the Agency on November 13, 2003.

15. In announcing its decision to restore Dr. Leighton's security clearance, the Agency stated that "on future security applications and forms she may, insofar as [the June 3, 2002]

decision [to revoke her security clearance] is concerned, affirm that she has never had her security clearance revoked."

16. The restoration of Dr. Leighton's security clearance was made under the standard that "any doubts regarding an individual having access to classified information must be resolved in favor of national security."

17. The Agency necessarily had concluded that its earlier findings regarding Dr. Leighton's alleged disclosures and admissions were factually incorrect.

18. On April 7, 2004, Dr. Leighton filed a request with the Agency to amend her record, pursuant to subsection (d)(2) of the Privacy Act, 5 U.S.C. § 552a(d)(2).

19. On May 18, 2004, prior to receiving a decision from the Agency on that request, Dr. Leighton filed an action in the United States District Court for the District of Columbia ("District Court") claiming, *inter alia*, that the Agency violated 5 U.S.C. § 552a(d)(2) by failing to amend Dr. Leighton's record, at her request, to expunge factually inaccurate information and 5 U.S.C. § 552a(e)(5) by the Agency's intentional or willful failure to maintain Dr. Leighton's record with accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in a determination

20. On October 6, 2004, during the pendency of this action in the District Court, the Agency denied Dr. Leighton's request to amend and informed her that, pursuant to 32 C.F.R. § 1901.42(c), the Agency would not consider any appeal of that decision.

21. On October 7, 2004, the Agency filed a motion to dismiss the District Court action. The lawsuit was dismissed, without prejudice, on January 18, 2005.

22. On March 2, 2006, Dr. Leighton filed an appeal to the Agency of its October 6, 2004 denial of her request, under 5 U.S.C. § 552a (d)(2), to amend her record

23. The Agency in a June 29, 2006, letter informed Dr. Leighton that her appeal of its October 6, 2004, denial was untimely, but it would consider Dr. Leighton's March 2, 2006 letter "a new request, with attendant appeal rights, for the amendment of records."

24. On August 18, 2006, the Agency denied Dr. Leighton's request to amend her records stating that "[t]he information contained in our official records documents the history, continuity, administrative process and analysis that were used in reaching a decision. The official record is an account of how events transpired and therefore, must remain inviolate." Exhibit 1.

25. On August 29, 2006, in accordance with 5 U.S.C. § 552a (d)(3), Dr. Leighton appealed the Agency's denial of her request to amend her records arguing that the Agency decision would allow it to circumvent the requirements of 5 U.S.C. § 552a(e)(5) to maintain a person's record "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness".

26. The Agency denied Dr. Leighton's appeal to have her record amended on December 19, 2006 based on the same rationale set forth in its August 18, 2006, denial. Exhibit 2.

27. At this time Dr. Leighton has exhausted her administrative remedies under 5 U.S.C. § 552a (d)(3).

## CLAIM FOR RELIEF

Violation of the Privacy Act, 5 U.S.C. § 552a(d)(3)

28. Dr. Leighton repeats the allegations set forth in paragraphs 1 through 27 of this Complaint as though fully set forth herein.

29. The Privacy Act, 5 U.S.C. § 552a(g)(1)(A), provides for civil remedies where an agency makes "a determination under [5 U.S.C. § 552a ](d)(3) not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection."

30. The Agency in denying Dr. Leighton's request to amend the records in question has decided to continue to include in Dr. Leighton's record factually inaccurate information.

31. The Agency's determination is subject to judicial review under 5 U.S.C. § 552a(g)(1).

32. The Privacy Act, 5 U.S.C. § 552a(g)(2)(A), allows this Court to order the agency to amend Dr. Leighton's records in accordance with her request or in such other way as this Court may direct, and 5 U.S.C. § 552a(g)(2)(B) allows this Court to assess against the Agency reasonable attorney fees and other litigation costs incurred by Dr. Leighton.

## PRAYER FOR RELIEF

WHEREFORE, Dr. Leighton requests that the Court:

(a) ENTER JUDGMENT ordering the agency to amend Dr. Leighton's records in accordance with her request or in such other way as the Court deems appropriate;

(b) AWARD to Dr. Leighton her costs and reasonable attorneys' fees and litigation expenses; and

(c ) GRANT such other and further relief as is just and proper.

Respectfully submitted,

/s/ Charles H. Carpenter
Charles H. Carpenter #432004
Sean P. Bamford, #487556
PEPPER, HAMILTON LLP
600 14th Street, N.W.
Washington, D.C. 20005
(202) 220-1507

Of Counsel:

Stephen M. Block (D.C. Bar No. 438520)
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union Fund
of the National Capital Area
1400 – 20th Street, NW, Suite 119
Washington, D.C. 20036-5920

Attorneys for Dr. Leighton