UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
PETER B.,                     )
                              )
          Plaintiff,          )
                              )
          v.                  )     Civil Action No. 06-1652 (RWR)
                              )
CENTRAL INTELLIGENCE AGENCY,  )
et al.,                       )
                              )
          Defendants.         )
_____)
```

MEMORANDUM OPINION AND ORDER

Plaintiff Peter B.[1] brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, the Privacy Act, 5 U.S.C. § 552a, and the Due Process Clause of the Fifth Amendment against the CIA and individuals within the CIA, alleging nine violations of his rights stemming from the CIA's decision to terminate his employment. The defendants have moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a claim, or in the alternative, to transfer this action to the Eastern District of Virginia. Because the defendants have not demonstrated that transfer is warranted, their motion to transfer venue will be denied. The defendants' motion to dismiss will be granted in part and denied in part.

_____

[1] As plaintiff's true name is classified, he has been permitted to file as "Peter B."

-2-

Because Counts I and IV of the amended complaint seek review that is precluded by the Civil Service Reform Act ("CSRA"), these counts will be dismissed for lack of jurisdiction.  Because Peter B. has stated claims under the Due Process Clause of the Fifth Amendment and the Privacy Act in the remaining seven counts of the amended complaint, the defendant's motion to dismiss Counts II, III and V through IX will be denied.

## BACKGROUND

Peter B. brings this action against the CIA, former CIA Director Michael V. Hayden, his former supervisor Margaret Peggy Lyons, and Does #1-10, unknown or covert officials of the CIA who he contends were involved in illegal actions against him.  He asserts that the CIA's conduct in terminating his employment and subsequently refusing to confirm certain information about his relationship with the CIA or communicating negative information about him to future employers violated his rights under the APA, the Privacy Act, the Due Process Clause of the Fifth Amendment, and other unidentified CIA regulations and statutes.

Peter B. contends that "[i]n the early 1990s, [he] entered into a covert operational relationship with the CIA" and "at a certain point in the 1990s he became a full [CIA] staff employee [as] possessive of all constitutional, statutory and regulatory rights as any other CIA federal employee[,]" which included "the usual rights, privileges and benefits that are accorded federal

-3-

employees." (Am. Compl. ¶¶ 8-9.) He alleges that "[o]n or about October 3, 2002, [his] relationship [with the CIA] was formally terminated," which left him "abandoned at his domestic post" and "forced to incur significant expenses that exceeded $15,000." (Id. ¶¶ 12, 15.) Peter B. further contends that he "was never provided any administrative remedies . . . which . . . he was entitled to pursue" as a federal employee and that "despite multiple requests," the only reason he has ever been given for his termination was that he was terminated "for the convenience of the government." (Id. ¶¶ 12, 18.)

In addition, Peter B. alleges that "[a]t the time [he was] terminated by the CIA he possessed a TS/SCI clearance that was still active" and "he was repeatedly verbally informed by representatives of the CIA that there were no security clearance issues or concerns within his CIA files." (Id. ¶ 20.) Still, he contends, "the CIA disseminated false and defamatory information concerning [him] to . . . government contractors for the purpose of causing the potential employer to either never provide Peter B. with an offer of employment or withdraw any such offer that had been provided." (Id. ¶ 21.)

In his amended complaint, Peter B. lists nine causes of action. Counts I and IV seek APA review of the CIA's classification of Peter B.'s employment status, Peter B.'s termination, and the CIA's failure to reimburse him for certain

-4-

expenses.  Counts II, III, V, and IX allege Fifth Amendment Due
Process claims.  Counts VI through VIII allege Privacy Act
violations.  The defendants have filed a motion to dismiss under
Rules 12(b)(1) and 12(b)(6), or in the alternative, to transfer
venue to the Eastern District of Virginia.

DISCUSSION

I.   MOTION TO TRANSFER VENUE

     The defendants contend that this case should be transferred
to the Eastern District of Virginia.  Venue is proper in the
District of Columbia because three of plaintiff's claims are
brought under the Privacy Act, which expressly permits claims to
be brought in the District of Columbia.  See 5 U.S.C.
§ 552a(g)(5) ("An action . . . may be brought in the district
court of the United States in the district in which the
complainant resides, or has his principal place of business, or
in which the agency records are situated, or in the District of
Columbia[.]").

     Nonetheless, a court may transfer a case "for the
convenience of parties and witnesses, in the interest of
justice."  28 U.S.C. § 1404(a).  The moving party has the burden
of persuasion, and must show that transfer is "'justified by
particular circumstances that render the transferor forum
inappropriate by reference to the considerations specified in
that statute.'"  SEC v. Savoy Indus. Inc., 587 F.2d 1149, 1154

-5-

(D.C. Cir. 1978) (quoting Starnes v. McGuire, 512 F.2d 918, 925 (D.C. Cir. 1974)).  A court has broad discretion to decide whether transfer from one jurisdiction to another is warranted for the convenience of the parties and witnesses.  Id.

A court may transfer an action under § 1404(a) only to a venue where the action "might have been brought."  See 28 U.S.C. § 1404(a).  This case could have been brought in the Eastern District of Virginia because relevant conduct underlying Peter B.'s claims occurred there and because the CIA resides in the Eastern District.  See 28 U.S.C. § 1391.  After determining that venue in the proposed transferee district would be proper, a court then "must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to [the] private concerns [of the parties], come under the heading of 'the interest of justice.'" Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988). Because "it is perhaps impossible to develop any fixed general rules on when cases should be transferred[,] . . . the proper technique to be employed is a factually analytical, case-by-case determination of convenience and fairness."  Savoy Indus., 587 F.2d at 1154 (internal quotation marks and citations omitted).

A.   Private factors

Private interest factors to consider typically include things such as each party's choice of forum, where the claim

-6-

arose, the convenience of the parties, the convenience of the
witnesses, particularly if important witnesses may actually be
unavailable to give live testimony in one of the trial districts,
and the availability and ease of access to sources of proof.
Montgomery v. STG Int'l, Inc., 532 F. Supp. 2d 29, 32-33 (D.D.C.
2008).  A plaintiff's choice of forum is generally accorded
substantial deference.  Schmidt v. Am. Inst. of Physics, 322 F.
Supp. 2d 28, 33 (D.D.C. 2004).  However, if the plaintiff is not
a resident of the forum and "most of the relevant events occurred
elsewhere," this deference is weakened.  Hunter v. Johanns, 517
F. Supp. 2d 340, 344 (D.D.C. 2007); see Robinson v. Eli Lilly &
Co., 535 F. Supp. 2d 49, 52 (D.D.C. 2008).  "When the events
occur in more than one district, a court can consider which
jurisdiction has the stronger factual nexus to the claims."
Miller v. Insulation Contractors, Inc., Civil Action No. 08-1556
(RWR), 2009 WL 1066263, at *2 (D.D.C. Apr. 21, 2009) (concluding
that where it was unclear in which forum "the more significant
locus of material events" occurred, the movant had not
demonstrated that the private interest factors favored transfer).

Peter B. does not claim to be a resident of the District of
Columbia, but he does allege that "events pertaining to [him]
took place within this jurisdiction."  (Am. Compl. ¶ 5.)
Although it is unclear what a qualitative or quantitative
comparison of the events in the two fora would reveal, the

-7-

allegation that at least some of the relevant conduct occurred in
this forum suggests that Peter B.'s choice of forum should be
accorded some deference.  Regarding where the claims arose,
because the CIA has a presence in both the District of Columbia
and Virginia, and because at least one of the defendants, Lyons,
works in the District of Columbia, Peter B. alleges that his
claims arose from events and actions, including those by Lyons,
that occurred in both jurisdictions.  (See id. ¶ 5; Pl.'s Opp'n
at 27.)  Accordingly, this factor favors neither forum.  The
remaining private interest factors do not strongly support
transfer because of the close proximity of this district and the
Eastern District of Virginia.  Peter B. alleges that "many of the
witnesses and the parties live or work with the District of
Columbia."  (Pl.'s Opp'n at 28 (noting that defendant Lyons
currently works in the District of Columbia).)  The defendants
contend that Virginia would be more convenient because the CIA
resides within that district and most of the records and other
evidence at issue are located there.  (See Defs.' Mem. in Support
of Their Motion to Dismiss ("Defs.' Mem.") at 29; Defs.' Reply
23-25.)  Although there is insufficient information at this early
stage to conclusively determine which forum hosts more evidence
or potential witnesses, neither the parties nor potential
witnesses would be significantly inconvenienced if the case is to

-8-

proceed in the District of Columbia rather than the Eastern
District of Virginia.

     B.   Public factors

    Relevant public interest factors include the local interest
in making local decisions about local controversies, the
potential transferee court's familiarity with the applicable law,
and the congestion of the transferee court compared to that of
the transferor court. Akiachak Native Cmty. v. Dep't of the
Interior, 502 F. Supp. 2d 64, 67 (D.D.C. 2007). Because Peter B.
alleges that significant events underlying his claims occurred in
both fora, the defendants have not carried their burden of
demonstrating that Virginia would have a greater local interest
in deciding this controversy. The complaint alleges causes of
action all grounded in the federal constitution and federal law,
and the two district courts would be deemed equally familiar with
applicable federal law in this case. Miller, 2009 WL 1066263, at
*3 (noting that "all federal courts are presumed to be equally
familiar with the law governing federal statutory claims").
Neither party has commented on the congestion in either forum.
The public factors, then, do not favor transfer.

    Thus, in light of both the private and public factors, the
defendants have not shown that transfer to the Eastern District
of Virginia would be more convenient for the parties or
witnesses, or be in the interest of justice. Accordingly, the

-9-

defendants' motion to transfer venue to the Eastern District of
Virginia will be denied.

II.  MOTION TO DISMISS

"On a motion to dismiss for lack of subject-matter
jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the
burden of establishing that the court has subject-matter
jurisdiction."  Shuler v. United States, 448 F. Supp. 2d 13, 17
(D.D.C. 2006) (citing Lujan v. Defenders of Wildlife, 504 U.S.
555, 561 (1992)).  In reviewing the motion, a court accepts as
true all of the factual allegations contained in the complaint,
see Lujan, 504 U.S. at 560, and may also consider "undisputed
facts evidenced in the record."  Coal. for Underground Expansion
v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003); see also Tootle v.
Sec'y of the Navy, 446 F.3d 167, 174 (D.C. Cir. 2006) (explaining
that a court may look to certain materials beyond the pleadings
to resolve disputed jurisdictional facts when considering a
motion to dismiss under Rule 12(b)(1)).  The "nonmoving party is
entitled to all reasonable inferences that can be drawn in [its]
favor."  Artis v. Greenspan, 158 F.3d 1301, 1306 (D.C. Cir.
1998).

A complaint can be dismissed under Rule 12(b)(6) when a
plaintiff fails to state a claim upon which relief can be
granted.  See Fed. R. Civ. P. 12(b)(6).  In order to survive a
motion to dismiss under Rule 12(b)(6), the allegations stated in

-10-

the plaintiff's complaint "must be enough to raise a right to relief above the speculative level[.]"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[A] well-pleaded claim may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely."  Id. (internal quotation marks omitted).  The complaint must be construed in the light most favorable to the plaintiff and "the court must assume the truth of all well-pleaded allegations."  Warren v. District of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004).  However, if a plaintiff fails to allege sufficient facts to support a claim, the complaint must be dismissed.  See Twombly, 550 U.S. at 555.

A.   Peter B.'s employment status

As a preliminary matter, the amended complaint contends that the nature of Peter B.'s relationship with the CIA is disputed. It alleges that he was "a full [CIA] staff employee [as] possessive of all constitutional, statutory and regulatory rights as any other CIA federal employee[,]" and that the CIA wrongly considered him to be "some sort of independent contractor whose relationship with the government can be terminated at its convenience."  (Am. Compl. ¶¶ 9-10.)  The amended complaint is unclear as to whether it alleges "inconsistent facts in support of alternative theories of recovery" -- where Peter B. is entitled to recover on his claims either as a "full staff

employee" or as "some sort of independent contractor" -- or if his claims are all premised on the assertion that he was a full staff employee of the CIA.  See Powers-Bunce v. District of Columbia, 479 F. Supp. 2d 146, 164-65 (D.D.C. 2007) (noting that a Rule 8(e) permits pleading inconsistent factual allegations); Doe v. Goss, Civil Action No. 04-2122 (GK), 2007 WL 106523, at *9 (D.D.C. Jan. 12, 2007) (same).  For example, in Count IV, labeled as a claim for "failure to follow regulations or statutes" and brought under the APA, the text begins with the assertion that "at a certain point in the 1990s [Peter B.] became a full staff employee [as] possessive of all constitutional, statutory and regulatory rights as any other CIA federal employee."  (Am. Compl. ¶ 46.)  Nonetheless, Count IV continues to allege that the CIA's failure to reimburse Peter B. certain expenses violated the APA "[r]egardless of whether [he] was a staff employee or some sort of contractor[.]"  (Am. Compl. ¶ 50.)  Thus, Count IV reasonably could be interpreted to be pleading APA claims as an employee or, in the alternative, as an independent contractor.

In their motion to dismiss or transfer, the defendants agree with Peter B.'s allegation that he was a CIA employee, but they argue that he was classified as a "contract employee," rather than a staff employee.  (Defs.' Mem. at 1-2 (labeling Peter B. as a "former covert contract employee").)  The defendants allege that a "contract employee . . . is defined as an individual

employed in a non-career status through a contract." (Id. at 6,
n.2 (internal quotation marks omitted).)  They contend that as a
contract employee, Peter B. was "appointed under the authority of
the [DCI] to serve in an employment relationship entitling [Peter
B.] to benefits provided under federal law or regulations except
as modified by law applicable to the [CIA]." (Id. (internal
quotation marks omitted).)  They further argue that as a contract
employee, Peter B. was subject to the provisions of the CSRA, "a
comprehensive remedial scheme for the review of personnel
decisions" made concerning federal employees.  (Id. at 6.)  Peter
B. does not refute the defendants' argument that he was a CIA
employee who was subject to the CSRA.  Indeed, in his opposition
to the defendants' motion, he virtually concedes that the CSRA
applies to him.  (Pl.'s Opp'n at 2 n.2 (stating that "if his APA
claims were solely to enforce CIA regulations," they would be
barred by the CSRA).)  "Where a plaintiff addresses some but not
all arguments raised in a defendant's motion to dismiss, courts
in this district may treat such arguments as conceded."  Payne v.
District of Columbia, Civil Action No. 08-163 (CKK), 2008 WL
5401532, at *6 (D.D.C. Dec. 30, 2008) (citing Fox v. Am.
Airlines, Inc., 295 F. Supp. 2d 56, 58 (D.D.C. 2003), aff'd, 389
F.3d 1291 (D.C. Cir. 2004)); Hopkins v. Women's Div., General Bd.
of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002)
(citing FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997)) ("It

-13-

is well understood in this Circuit that when a plaintiff files an
opposition to a motion to dismiss addressing only certain
arguments raised by the defendant, a court may treat those
arguments that the plaintiff failed to address as conceded.").
Accordingly, because Peter B. makes no attempt to preserve any
argument that he was not a CIA employee subject to the CSRA, the
defendants' argument that Peter B. was a CIA employee subject to
the CSRA will be deemed conceded and will be accepted.

    B.   <u>APA review of adverse personnel decisions (Counts I and
IV)</u>

In Counts I and IV of the amended complaint, Peter B. seeks
APA review of the CIA's alleged misclassification of his
employment status, the decision to deny him certain benefits, and
the decision to terminate his employment with the CIA.  (Am.
Compl. ¶¶ 22-28; 44-54.)  The defendants contend that these
claims "challenge various personnel actions" which are precluded
from review by the CSRA, and that the CSRA provides the exclusive
framework for how federal employees may seek review of adverse
personnel decisions.  (<u>See</u> Defs.' Mem. at 5-8.)

When enacted, the CSRA "established an elaborate new
framework for evaluating adverse personnel actions [taken]
against certain categories of federal employees." <u>Doe v. Goss</u>,
Civil Action No. 04-2122 (GK), 2007 WL 106523, at *4 (D.D.C.
Jan. 12, 2007).  The scheme is a comprehensive and "exclusive
framework for judicial review" of personnel decisions within its

-14-

ambit.  Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.,
940 F.2d 704, 709 (D.C. Cir. 1991) (internal quotations and
citations omitted).  "The CSRA expressly excludes CIA employees
from the classes of employees for whom the CSRA's review
procedures are available."  Doe v. Goss, 2007 WL 106523, at *6
(citing 5 U.S.C. §§ 2302(a)(2)(A), 7511(b)(7)).  Although CIA
employees are excluded from those employees permitted to invoke
the CSRA's review procedures, their exclusion does not leave them
"free to pursue whatever judicial remedies [they] would have had
before enactment of the CSRA."  United States v. Fausto, 484 U.S.
439, 447 (1988).  Fausto explained that "[d]irect judicial review
for non-covered employees would undermine 'the development,
through the [Merit Systems Protection Board], of a unitary and
consistent Executive Branch position on matters involving
personnel action,' and would frustrate the congressional intent
to 'avoid[] an unnecessary layer of judicial review in lower
federal courts."  Doe, 2007 WL 106523, at *5 (quoting Fausto, 484
U.S. at 449 (internal quotations omitted)).

     Thus, the court of appeals has concluded that when the CSRA
precludes judicial review of an adverse personnel action, the APA
cannot be used to circumvent the CSRA.  Harrison v. Bowen, 815
F.2d 1505, 1513 (D.C. Cir. 1987); Carducci v. Regan, 714 F.2d
171, 174-75 (D.C. Cir. 1983).  For example, a plaintiff cannot
"invoke the principle that agencies must follow their own

-15-

regulations" to suggest that the agency created a right to APA review outside of the CSRA scheme because "agencies cannot purport to confer rights undermining a comprehensive congressional scheme." See Graham v. Ashcroft, 358 F.3d 931, 935-36 (D.C. Cir. 2004).

Peter B. offers no argument in response to defendants' contention that the claims alleged in Counts I and IV seek APA review of adverse personnel actions that is barred by the CSRA. Accordingly, this argument will be deemed conceded and the defendants' motion to dismiss Counts I and IV will be granted.

     C.   Due process claims (Counts II, III, V, and IX)

In Claims II, III, V, and IX, Peter B. alleges that he was deprived of a protected liberty interest without procedural due process.  The Fifth Amendment protects an individual's right to due process before the federal government may infringe upon a person's protected property or liberty interest.  See Bd. of Regents v. Roth, 408 U.S. 564, 576 (1972); Griffith v. Federal Labor Relations Auth., 842 F.2d 487, 495-97 (D.C. Cir. 1988). The defendants argue that Peter B. has failed to state a deprivation of either a property interest or liberty interest without due process.  In his opposition to the defendants' motion to dismiss, Peter B. groups all four of his due process claims as claims alleging infringement of a protected liberty interest, alleging that the CIA has deprived him of his protected liberty

interest in his reputation and his ability to seek employment in his chosen field without required due process.  Because he does not refute the government's argument that he had no property interest in his position with the CIA, this argument will be deemed conceded.

In Roth, the Supreme Court found that the government's failure to re-hire a teacher was alone insufficient to implicate a due process liberty interest because a person is not "deprived of 'liberty' when he simply is not rehired in one job but remains free as before to seek another."  408 U.S. at 575 (citing Cafeteria Workers v. McElroy, 367 U.S. 886, 895-96 (1961)). However, the Court concluded that had the government's failure to rehire the plaintiff gone beyond simply foreclosing the single employment opportunity and instead harmed the plaintiff's "good name, reputation, honor, or integrity," or "imposed . . . a stigma or other disability [on him] that foreclose[s] his freedom to take advantage of other employment opportunities," then the government's action would have implicated the person's due process liberty interest.  Id. at 573; see Orange v. District of Columbia, 59 F.3d 1267, 1274 (D.C. Cir. 1995) (stating that, for a liberty interest claim, a plaintiff must "show that the government 'altered [his] status in a tangible way, and that an imposition of stigma or injury to reputation accompanied this change in status.'" (quoting United States Info. Agency v. Krc,

905 F.2d 389, 397 (D.C. Cir. 1990))).  Under the first Roth test,
called "reputation-plus," a plaintiff can show a protected
liberty interest by establishing that the government changed his
status and accompanied such a change with defamation that
"seriously damage[d] his standings and associations in the
community."  M.K. v. Tenet, 196 F. Supp. 2d 8, 15 (D.D.C. 2001);
see O'Donnell v. Barry, 148 F.3d 1126, 1139-40 (D.C. Cir. 1998).
Under the second test, termed "stigma or disability," a
protectable liberty interest is implicated if the government
alters the employee's status and such a change "foreclose[s] his
freedom to take advantage of other employment opportunities by
either (a) automatically excluding him from a definite range of
employment opportunities with the government or (b) broadly
precluding him from continuing his chosen career."  M.K., 196 F.
Supp. 2d at 15; see O'Donnell, 148 F.3d at 1140.  When the
government has infringed upon a person's protected liberty
interest under either test, the person has a due process right to
notice and an opportunity to refute the charges against him and
to clear his name.  Doe v. U.S. Dep't of Justice, 753 F.2d 1092,
1102 (D.C. Cir. 1985) (holding that because a Fifth Amendment
liberty interest claim implicates an interest in one's "post-
employment reputation rather than any right to continued
employment," the "well-settled remedy" is a name-clearing
hearing).

-18-

1.   Reputation-plus claim

Under the reputation-plus test, Peter B. alleges that the defendants altered his status by terminating his employment and publicly defamed him by "disseminat[ing] inaccurate and/or derogatory information throughout the CIA that unlawfully and unethically caused his employment with the CIA to be terminated" and by "plac[ing] negative information within [his] files which [were] 'available, even on a limited basis, to prospective employers or government officials.'"  (Pl.'s Opp'n at 9-10 (quoting Kartseva v. Dep't of State, 37 F.3d 1524, 1528 (D.C. Cir. 1994)).)  Defamation alone is not does not give rise to a due process claim.  Siegert v. Gilley, 500 U.S. 226, 233-34 (1991) (holding that injury to reputation alone is not a protected liberty interest); Paul v. Davis, 424 U.S. 693, 706 (1976) ("[T]he Court has never held that the mere defamation of an individual . . . was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment."); see also Orange, 59 F.3d at 1274.  "For a defamation to give rise to a right to procedural due process, it is necessary . . . that the defamation be accompanied by a discharge from government employment" or other adverse personnel action.  Mosrie v. Barry, 718 F.2d 1151, 1161 (D.C. Cir. 1983) (emphasis added).  "Although the conceptual basis for reputation-plus claims is not fully clear, it presumably rests on

the fact that official criticism will carry much more weight if the person criticized is <u>at the same time</u> demoted or fired." <u>O'Donnell</u>, 148 F.3d at 1140 (emphasis added); <u>see</u> <u>Doe v. Dep't of Justice</u>, 753 F.2d at 1113 n.25 ("conclud[ing] only that a government employee must be given a name-clearing hearing when the government disseminates allegedly false and reputation-destroying charges against her in the course of her discharge").

Peter B. "has emphatically alleged that [d]efendants Lyons and Does #1-#10 disseminated inaccurate and/or derogatory information throughout the CIA that unlawfully and unethically <u>caused</u> his employment with the CIA to be terminated[.]"  (Pl.'s Opp'n at 9 (emphasis added); <u>see</u> Am. Compl. ¶ 13 (alleging that these defendants "took steps . . . [to] ensure Peter B.'s relationship with the CIA was terminated [which] included . . . dissemination of false information").)  To the extent Peter B. is alleging only that the defendants' defamatory statement caused his termination, he has not stated a claim under the reputation-plus test because the defendants' alleged defamatory statements did not accompany his termination.  An alleged cause-and-effect relationship between the defendants' conduct and Peter B.'s termination alone does not state a reputation-plus claim because such a claim does not suggest that the CIA publicly adopted the individual defendants' defamatory statements as the reason for

his termination.  The distinguishing feature between ordinary
defamation and reputation-plus defamation is that the defamation
is part of an official action, on the theory that the official
action makes the defamation much more damaging.  See O'Donnell,
148 F.3d at 1140.  Absent a showing that the individual
defendants' statements were offered as the reasons for the
decision to terminate Peter B., the individual defendants'
conduct was only ordinary defamation that does not implicate a
liberty interest.  Drawing all reasonable inferences in Peter
B.'s favor, though, it is plausible that the complaint is
alleging that the CIA publicly adopted the individual defendants'
defamatory statements against Peter B. as the reasons for Peter
B.'s termination.  Such an allegation states a claim under the
reputation-plus test.

Similarly, Peter B.'s allegation that there is negative
information injuring his reputation in his file that is publicly
available to future employers states a reputation-plus claim if
he is alleging that the negative information in his file consists
of the reasons for his termination.  The court of appeals has
held that a person has a due process right to clear his name if
he "can demonstrate that the stigmatizing reasons for [his]
discharge were disclosed to the public or were made available to
prospective employers or other government personnel."  Doe v.
Dep't of Justice, 753 F.2d at 1113; see also Brandt v. Board of

Co-op Educ. Servs., 820 F.2d 41, 45 (2d Cir. 1987) (holding that a liberty interest would be implicated where stigmatizing charges "were placed in the employee's file during the course of his termination" and "were likely to be disclosed to future employers").  In such a situation, as is alleged in this case, although the defamation has occurred after the status change, it is nonetheless accompanying the status change if it being offered as the official reason for the status change.  See id.

Without evidence of the contents of Peter B.'s personnel files, the record does not reflect whether the alleged "false and defamatory information concerning Peter B." made available to the contractors was the reason for his termination, which would implicate a liberty interest requiring due process, or was simply defamation unrelated to any determination of Peter B.'s employment status, which does not confer any due process right. In addition, based on Peter B.'s allegations, it is impossible to discern whether any alleged derogatory statements were in fact statements that injure one's reputation under the law.  For example, in Department of the Navy v. Egan, 484 U.S. 518 (1988), the Supreme Court concluded that a clearance determination "does not equate with passing judgment upon an individual's character." Id. at 528.  Accordingly, a statement that simply indicates a person's ineligibility for a security clearance, without more, would not be an injury to reputation.  See id.  Based on Peter

-22-

B.'s allegations in the complaint,[2] it is a reasonable inference that the alleged statements disseminated throughout the CIA to cause his termination may have been sufficiently defamatory to injure Peter B.'s reputation and may have been adopted as reasons for his termination and subsequently communicated to his potential employers as the reasons for his termination.

Defendants contend that Peter B. will not be able to establish that any negative reasons for his termination, if such reasons existed, were publicly disclosed to any party outside the CIA because he was a covert employee whose "connection with the CIA cannot be publicly revealed" and CIA regulations explicitly prohibit disclosure of the reasons for a termination without consent of the employee.  (Defs.' Reply at 7.)  This argument attacks the merits of Peter B.'s factual allegation that such disclosure did occur, and Peter B. is entitled to the truth of all his factual allegations at this stage.  Thus, because Peter B. maintains he has never had a notice or an opportunity to refute negative information relating to his termination that has been allegedly disclosed to his potential employers, Peter B. has

---

[2]For example, the complaint alleges that "Lyons and Does #1-#10 took steps based on their own personal reasons to unlawfully and/or unethically ensure Peter B.'s relationship with the CIA was terminated . . . includ[ing], but . . . not limited to, the dissemination of false information concerning Peter B."  (Am. Compl. ¶ 13.)  It further contends that after Peter B.'s termination, "the CIA disseminated false and defamatory information concerning Peter B. to . . . government contractors." (Id. ¶ 21.)

-23-

stated a claim under a reputation-plus theory that he was deprived of a protected liberty interest without due process.

2. Stigma or disability claim

Under the stigma or disability test, a plaintiff must identify "the combination of a [status change] and 'a stigma or other disability that foreclosed [the plaintiff's] freedom to take advantage of other employment opportunities[.]'" O'Donnell, 148 F.3d at 1140 (quoting Roth, 408 U.S. at 573).  Peter B. alleges that the "CIA's dissemination of false information concerning [him] . . . has the same impact as actually denying or revoking his security clearance," and as a result, amounts to a status change sufficient to support a stigma or disability claim. (Am. Compl. ¶ 111; see Pl.'s Opp'n at 10-14.)  He cites Kartseva for the proposition that a "negative change in a plaintiff's status adequate to implicate a liberty interest can be found where a federal agency's conduct has the 'broad effect of precluding [the employee] from pursuing [their] (sic) chosen career.'"  (Pl.'s Opp'n at 12 (quoting Kartseva, 37 F.3d at 1528) (bracketed language in original).)  He suggests that "[his] status, like that of Kartseva, was adequately altered, as he has been broadly precluded from work in his chosen career due to the inaccurate [or] derogatory statements made by the CIA to contractors concerning him."  (Id.)

-24-

In <u>Kartseva</u>, the State Department conducted a background check on the plaintiff, a Russian language translator employed by a government contractor, found that her background check revealed "several significant counterintelligence concerns," and "asked the [contractor] to 'act on' this determination."  37 F.3d at 1526.  "Based on State's communication, [the contractor] terminated Kartseva."  <u>Id.</u>  Kartseva alleged that the State Department's determination implicated a protected liberty interest entitling her to due process under the Fifth Amendment. <u>Id.</u>  The court of appeals held that one way Kartseva could show that the State Department's determination implicated a protected liberty interest was by demonstrating that, even if not an "official disbarment" from all public contracting, the State Department's action, "was, in fact, a determination of her legal eligibility to work on future State contracts[.]"  <u>Id.</u> at 1528. The court further held that, in the alternative, Kartseva could prove "whether State's disqualification interfere[d] with [her] constitutionally protected 'right to follow a chosen trade or profession.'"  <u>Id.</u> at 1529 (quoting <u>Cafeteria Workers</u>, 367 U.S. at 895-96).  It then concluded that it was "impossible to speculate on whether th[e] disqualification implicate[d] Kartseva's general employability" because the record did not disclose the "'counterintelligence concerns' underlying the disqualification."  <u>Id.</u> at 1529-30.  Accordingly, the court

-25-

remanded the question of whether Kartseva stated a liberty interest claim under a "preclusion from chosen profession" theory for further proceedings to determine "the scope of the disqualification," and whether the State Department's disqualification determination for the single project was "sufficiently stigmatic to work a similar disqualification through much of Kartseva's field."  Id. at 1530.

Peter B. suggests that Kartseva would support a claim that the CIA's negative statements alone, without a some kind of actual determination of his clearance status, can become a status change merely because of their potential effect on his future employment opportunities.  That suggestion is inconsistent with a close reading of Kartseva and Supreme Court precedent.  First, the court in Kartseva found that there was a change in Kartseva's status -- as it described, "State's express disqualification" -- for at least her current project.  Id.  Thus, the critical question was the second element of the stigma or disability test -- whether the status change foreclosed her future employment opportunities beyond the single project.  Further, the Supreme Court has concluded that defamation alone cannot be a "constitutional deprivation," even if the alleged result is "serious impairment of [one's] future employment opportunities." Siegert, 500 U.S. at 233-34; see Paul, 424 U.S. at 706.  In Siegert, Siegert's former government employer wrote a negative

letter of recommendation to the plaintiff's subsequent employer.
500 U.S. at 228.  The Court found that Siegert had stated only a
tort claim for defamation, but not a claim for a constitutional
deprivation of liberty, despite the effect of the defamation on
Siegert's future employment.  <u>See id.</u> at 233.  The Court
explained that its "reference to a government employer
stigmatizing an employee in [<u>Roth</u>] was made in the context of the
employer discharging or failing to rehire a plaintiff[,]" and
Siegert had not connected the alleged defamation to a similar
action.  <u>Id.</u>

At this stage, however, without any record evidence
revealing any actual statements, Peter B. is entitled to the
reasonable inference that the CIA's alleged negative statements
were not merely defamatory, but reflected an underlying
determination of Peter B.'s clearance eligibility.  If discovery
were to reveal evidence leading to such a conclusion, then the
CIA's conduct could be analogous to the State Department's
determination of Kartseva's contract eligibility and sufficiently
distinguishable from the mere defamation against Siegert.  On the
other hand, if the CIA's statements merely suggested that
negative information existed concerning Peter B., but did not
reflect that the CIA had acted upon such information, these
statements likely would not show that Peter B. suffered a status
change that would support a colorable due process claim.  Rather,

-27-

such statements might sound in the tort of defamation.
Construing the facts in Peter B.'s favor, he has stated a claim
under the stigma or disability test to the extent he has alleged
that the CIA's alleged negative statements to contractors
reflected an actual determination of Peter B.'s clearance
eligibility, and were not merely defamatory.

> D.   Privacy Act claims (Counts VI through VIII)

Peter B. argues that the defendants violated the Privacy Act
by failing to collect information about him to the greatest
extent possible, failing to maintain accurate records, and
disseminating inaccurate information relating to him, in
violation of 5 U.S.C. § 552a(e)(2), (e)(5), and (e)(6).  The
defendants contend that these claims should be dismissed because
Peter B. has not pled these claims with sufficient factual basis
to withstand a motion to dismiss and because any Privacy Act
claims are barred by the CSRA and the Privacy Act's statute of
limitations.  (See Defs.' Mem. at 21-25; Defs.' Reply at 13-15.)

> 1.   5 U.S.C. § 552a(e)(2)

In Count VI, Peter B. alleges that the CIA terminated him
based on incomplete or false records without affording him the
opportunity to provide or correct information.  Under
§ 552a(e)(2), an agency maintaining a system of records must
"collect information to the greatest extent practicable directly
from [an] individual when the information may result in adverse

determinations about [the] individual's rights, benefits, and privileges."  To state a claim for damages under this section, a plaintiff must allege facts that suggest not only that "the agency failed to elicit information directly from him to the greatest extent practicable," and that "this action had an adverse effect on [him,]" but also that "the violation of the Act was intentional or willful."[3]  Waters v. Thornburgh, 888 F.2d 870, 872 (D.C. Cir. 1989), abrogated on other grounds by Doe v. Chao, 540 U.S. 614 (2000) (internal quotation marks and citation omitted).

Peter B. alleges that the defendants violated this section because "the CIA and one or more of the individual defendants has failed to maintain [his] records with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to denote his true employment status with the CIA and the extent to which he possesses a security clearance," and "compiled information and arrived at conclusions that were irrelevant, false, malicious and defamatory, incomplete, inaccurate, and untimely."  (Am. Compl. ¶¶ 75-76.)  He further contends that he was never given an opportunity to review any information "that led to his termination or that pertains to his security clearance."  (Id. ¶ 76.)  In addition, he alleges that "[t]he CIA's failure to

---

[3]Damages under the Privacy Act are available only if an agency "acted in a manner which was intentional or willful."  5 U.S.C. § 552a(g)(4).

collect information directly from [him] resulted in adverse
determinations concerning his rights, benefits, privileges, or
opportunities," and that the CIA and individuals within the CIA
acted intentionally, knowing their actions were unlawful.  (Id.
¶¶ 77-78.)

The defendants contend that Peter B. has not pled this claim
with adequate specificity to survive Rule 12(b)(6) scrutiny.
(See Defs.' Mem. at 24.)  Where a "plaintiff does not even know
the precise contents of his records because . . . he has no
access to them," a plaintiff cannot be expected to plead much
detail.  Doe v. Goss, 2007 WL 106523, at *9.  Here, Peter B.
contends that the information relevant to his claims, including
his records has been solely within the defendants' possession.
(See Am. Compl. ¶ 77; Pl.'s Opp'n at 24.)  Nonetheless, he does
allege specifically (1) that he was terminated without any
explanation other than that his termination was for "the
convenience of the government;" (2) that defendant Lyons and
other unnamed defendants had "personal reasons to . . . ensure
[his] relationship with the CIA was terminated;" and (3) that,
despite assurances by CIA representatives that there were no
concerns related to his security clearance, at least one or more
potential employers have been unable to have his clearance
transferred or renewed, causing the employer to not provide or to
withdraw an offer of employment.  (Am. Compl. ¶¶ 12, 20-21.)  A

reasonable inference can be drawn in Peter B.'s favor based on the defendants' alleged personal bias against Peter B. and the contractors' negative reactions to contact with the CIA concerning Peter B. that Peter B.'s records contain false and derogatory information that caused the CIA to terminate his employment, and that eliciting information directly from Peter B. may have corrected any false information.  Thus, Peter B. has met his minimal burden of pleading sufficient facts suggesting that discovery will reveal the CIA's intentional and willful failure to obtain information from him that was relevant to its decision to terminate him, and that this failure was the cause of his termination.  Accordingly, Peter B. has stated a claim under 5 U.S.C. § 552a(e)(2).

Nonetheless, the defendants contend that even if Peter B. has stated a claim under this section, his claim is precluded by the CSRA and time-barred by the Privacy Act's statute of limitations.  The CSRA provides the exclusive framework for review of adverse personnel decisions made against employees, and the Privacy Act cannot be used to circumvent the CSRA scheme. See Hubbard v. E.P.A., 809 F.2d 1, 5 (D.C. Cir. 1986), aff'd in part on other grounds sub nom. Spagnola v. Mathis, 859 F.2d 223 (D.C. Cir. 1988); Doe v. Goss, 2007 WL 106523, at *8.  Thus, where review of personnel action is prohibited by CSRA, the Privacy Act cannot be used as a means to seek such review.  Id.

-31-

For example, in <u>Kleiman v. Dep't of Energy</u>, 956 F.2d 335 (D.C. Cir. 1992), a former federal employee, subject to the CSRA, sought correction of his records under the Privacy Act, alleging that "his personnel records [were] inaccurate because they reflect[ed] the title, [but] not the work" he performed.  <u>Id.</u> at 336.  The court held that Kleiman's claim was precluded by the CSRA because the alleged "error" he sought corrected was the agency's substantive determination of his job within the agency. <u>See id.</u> at 337-38.  It determined that "'[t]he Privacy Act allows for amendment of factual or historical errors,'" but is not "'a vehicle for amending the <u>judgments</u> of federal officials or . . . other[s] . . . as those judgments are reflected in records maintained by federal agencies.'"  <u>Id.</u> (quoting <u>Rogers v. U.S. Dep't of Labor</u>, 607 F. Supp. 697, 699 (N.D. Cal. 1985)). Determining whether the records inaccurately reflected the plaintiff's job description would have required the court to replicate the procedures used by the agency to determine the classification.  Plaintiff's claim, then, although cast as a Privacy Act claim, was in substance a review of a personnel action that was within the CSRA's exclusive jurisdiction.  <u>Id.</u> at 338.

Here, Peter B. cannot use his Privacy Act claims to seek review of the CIA's alleged adverse personnel decisions against him.  At this early stage, though, the documents at issue are not

-32-

yet in the record.  It is premature to determine whether Peter B.
seeks to correct factually inaccurate records, or if Peter B.
disagrees with the defendants' judgments contained in his
records.  If it is the former, correcting facts would not be
precluded by the CSRA.  If it is the latter, correction would be
an impermissible attempt to circumvent the CSRA.  See id. at 337-
38.

       However, even where the CSRA precludes review of the CIA's
personnel decisions, a court still "retain[s] jurisdiction to
award damages 'for an adverse personnel action actually caused by
an inaccurate or incomplete record.'"  Doe v. Goss, 2007 WL
106523, at *8 (quoting Hubbard, 809 F.2d at 5) (emphasis in
original).  Thus, "[a] Privacy Act claim survives CSRA preclusion
in this jurisdiction if a plaintiff shows the harm alleged was
actually caused by the alleged violation."  Id.  For this claim,
Peter B. alleges that the defendants "compiled information and
arrived at [false] conclusions" about him while he "was never
provided an opportunity to review or challenge any evaluation or
determination that led to his termination that pertains to his
security clearance."  (Am. Compl. ¶ 76.)  He further alleges that
it was "[t]he CIA's failure to collect information directly from
[him that] resulted in adverse determinations concerning his
rights, benefits, privileges, or opportunities."  (Id. ¶ 77.)
With these allegations, Peter B. has met his minimal burden of

-33-

pleading facts suggesting that the defendants' violation of § 552a(e)(2) actually caused his termination.  Accordingly, Peter B.'s claim cannot be dismissed as precluded by the CSRA at this time.

In addition, the defendants have failed to establish that Peter B.'s § 552a(e)(2) is time-barred.  The statute of limitations is an affirmative defense and the defendant bears the burden of proof.  See M.K., 196 F. Supp. 2d at 13 (concluding that a plaintiff need not anticipate and rebut a statute of limitations argument in the complaint); Doe v. Dep't of Justice, 753 F.2d at 1115.  Thus, "a motion to dismiss may be granted on the basis that the action is time-barred only when it appears from the face of the complaint that the relevant statute of limitations bars the action."  Doe v. Dep't of Justice, 753 F.2d at 1115.  Under 5 U.S.C. § 552a(g)(5), a Privacy Act claim must be brought

> within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required . . . to be disclosed to an individual and the information so misrepresented is material to the establishment of the liability of the agency . . . , the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

5 U.S.C. 552a(g)(5).

In response to the defendants' argument, Peter B. alleges that "due to the CIA's intentional and willful misrepresentation

-34-

of information concerning Peter B.[,] he did not become aware of
the violation until the rescission of the offer of employment
from [government] contractors which occurred as recently as
2006," which was within two years of the filing of this
complaint.  (Pl.'s Opp'n at 20.)  Peter B. alleges that the
defendants repeatedly refused to provide a reason for his
termination, denied him access to records underlying the
termination decision, and repeatedly reassured him that there
were no issues with his security clearance.  (See, e.g., Am.
Compl. ¶¶ 12-13; 76.)  In addition, he contends that afterwards,
within two years before the filing of the complaint, one or more
potential employers contacted the CIA to request information
about him and they received negative information that caused them
to rescind or decide not to offer an opportunity for employment.
(Id. ¶ 21.)  Construing these allegations in Peter B.'s favor, at
least two permissible inference can be drawn: 1) the defendants'
conduct toward Peter B. reflected deliberate misrepresentations
as to whether negative information existed in his records against
which Peter B. should have had the opportunity to defend; and
2) the defendants' conduct may have prevented Peter B. from
discovering his claim until the contractors contacted the CIA,
within the two years prior to his filing the complaint, and
received negative information.  Accordingly, Peter B. has alleged
a timely claim and his § 552a(e)(2) claim will not be dismissed.

-35-

2.   5 U.S.C. § 552a(e)(5)

Count VII alleges that the CIA violated Peter B.'s rights under 5 U.S.C. § 552a(e)(5) by willfully failing to maintain accurate records relating to him.  Section 552a(e)(5) "requires an agency to 'maintain all records which are used by the agency in making any determination about any individual with such accuracy . . . as is reasonably necessary to assure fairness to the individual in the determination.'"  Deters v. U.S. Parole Comm'n, 85 F.3d 655, 657 (D.C. Cir. 1996) (quoting 5 U.S.C. § 552a(e)(5)).  A § 552a(e)(5) claim requires proof that "(1) [the plaintiff] has been aggrieved by an adverse determination; (2) the [defendant] failed to maintain [plaintiff's] records with the degree of accuracy necessary to assure fairness in the determination; (3) the [defendant's] reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the [defendant] acted intentionally or willfully in failing to maintain accurate records."  Id.  Here, as in his § 552a(e)(2) claim, Peter B. alleges that the presence of false and derogatory information in his records was caused by the defendants' willful failure to maintain his records and that the defendants' failure to maintain accurate records caused his termination.  (See Pl.'s Opp'n at 22-23.)  For the purposes of Rule 12(b)(6), these factual allegations state a claim under § 552a(e)(5) upon which relief could be granted.

-36-

3.   5 U.S.C. § 552a(e)(6)

Under 5 U.S.C. § 552a(e)(6), "prior to disseminating any
record about an individual to any person other than an agency,
. . . [an agency shall] make reasonable efforts to assure that
such records are accurate, complete, timely, and relevant for
agency purposes[.]"  Peter B. alleges that the defendants
"disseminated inaccurate information from [his] . . . [r]ecords
to at least one government contractor that had hired [him], which
as a result, led to the rescission of the employment offer due to
alleged security concerns."  (Am. Compl. ¶ 101.)  Taking these
factual allegations as true, they state a claim under
§ 552a(e)(6).

<u>CONCLUSION AND ORDER</u>

Because venue is proper in the District of Columbia and the
relevant venue factors do not favor transfer to the Eastern
District of Virginia, the defendants' motion to transfer venue
will be denied.  Because the CSRA provides the exclusive
framework for federal employees to seek review of adverse
personnel actions, Peter B.'s claims in Counts I and IV seeking
APA review of the CIA's adverse personnel actions concerning him
are barred by the CSRA and will be dismissed.  Drawing all
reasonable inferences in Peter B.'s favor, he has pled a
constitutional deprivation of a liberty interest without due
process insofar as he contends that the defendants have

-37-

disseminated negative reasons for his termination to future
employers.  Thus, the defendants' motion to dismiss Peter B.'s
due process claims found in Counts II, III, V, and IX will be
denied.  Because Peter B. also has alleged facts that, if proven,
could support claims for damages under the Privacy Act, the
defendants' motion to dismiss Peter B.'s Privacy Act claims found
in Counts VI through VIII will be denied.  Accordingly, it is
hereby

ORDERED that the defendants' motion to dismiss or, in the
alternative, to transfer venue to the Eastern District of
Virginia be, and hereby is, GRANTED IN PART and DENIED IN PART.
Counts I and IV of the amended complaint are DISMISSED.  The
defendants' motion in all other respects is DENIED.

SIGNED this 1st day of June, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge