**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

---

**PETER B.,**

      **Plaintiff,**

    v.              1:06-CV-1652
                         (FJS)

**CENTRAL INTELLIGENCE AGENCY,**
**MARGARET PEGGY LYONS,[1] DOES 1-10**
**and JOHN O. BRENNAN, Director, Central**
**Intelligence Agency,**

      **Defendants.**

---

**APPEARANCES**               **OF COUNSEL**

**LAW OFFICES OF MARK S. ZAID, P.C.**    **MARK S. ZAID, ESQ.**
1250 Connecticut Avenue, NW        **BRADLEY P. MOSS, ESQ.**
Suite 200
Washington, D.C. 20036
Attorneys for Plaintiff

**UNITED STATES DEPARTMENT**      **MARCIA KAY SOWLES, ESQ.**
**OF JUSTICE**
20 Massachusetts Avenue, NW
Room 7108
Washington, D.C. 20530
Attorneys for Defendants

**SCULLIN, Senior Judge**

---

[1] In its April 27, 2015 Order, the Court denied Plaintiff's motion to serve Defendant Lyons beyond the 120-day time frame set forth in Rule 4(m) of the Federal Rules of Civil Procedure and dismissed Plaintiff's claims against Defendant Lyons without prejudice. *See* Dkt. No. 53.

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Pending before the Court are Defendant Central Intelligence Agency's ("CIA") motion for summary judgment[2] and Plaintiff's response thereto, which includes a motion for additional discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

**II. BACKGROUND**

**A.    Factual background**[3]

Defendant CIA hired Plaintiff as a covert contract employee on January 22, 1992, for a two-year term. *See* Declaration of Angela Pierson ("Pierson Decl.") at ¶ 4. The contract provided that Defendant CIA could extend it for additional periods. *See id.* at Attachment 1. Defendant CIA extended the contract for a series of consecutive periods through October 4, 2002. *See id.* at ¶ 5. On that date, the contract expired and was not extended. *See id.* Defendant CIA informed Plaintiff that the reason that his employment had ended was due to the expiration of his contract. *See id.* at ¶ 8. Plaintiff signed a document acknowledging that he understood that his contract had expired. *See id.* at Attachment 2.

As a covert contract employee, Plaintiff's affiliation with Defendant CIA was and remains classified. *See id.* at ¶ 10. Therefore, Plaintiff is not permitted to reveal his relationship to the CIA

---

[2] Although there are nominally two remaining Defendants in this action - Defendant Central Intelligence Agency and Defendant John O. Brennan, as Director of the CIA - the Court will refer to these two Defendants collectively as Defendant CIA.

[3] The Court notes that Plaintiff did not file a response to Defendant CIA's Statement of Material Facts Not in Dispute. In lieu thereof, Plaintiff filed a Rule 56(f) Affidavit stating that he required more discovery before he could respond fully.

-2-

or that he had a national security clearance with the CIA to a potential employer. *See id.* If he were to do so, he would violate the terms of his secrecy agreement. *See id.*

It is Defendant CIA's policy to respond to requests for employment verification only if those requests are in writing. *See id.* Any inquiry directed to Defendant CIA by any government contractor regarding Plaintiff would have resulted in a denial that Plaintiff had any affiliation with Defendant CIA. *See id.* If such an inquiry had occurred in Plaintiff's case, it would have been considered a potential security violation. *See id.* Such an inquiry would have been recorded and, most likely, investigated. *See id.* There is no record of any such inquiry. *See id.*

If it were necessary for some reason for Plaintiff to reveal his relationship to Defendant CIA, he could have prearranged to have Defendant CIA confirm his affiliation to a cleared outside contact. *See id.* at ¶ 13. However, if Plaintiff had made such a request, there would have been a record of it; and Defendant CIA has no record of any such request or approval for such a disclosure. *See id.* Even if Defendant CIA had approved such an arrangement with a cleared contact, the only information that Defendant CIA would have shared would have been salary information, service computation date and other general employment data. *See id.* at ¶ 14. Defendant CIA's policy prohibits sharing any other information that might be contained in an employee's personnel file. *See id.* Likewise, Defendant CIA does not provide prospective employers access to an employee's personnel records. *See id.*

Defendant CIA asserts that an outside entity providing cover for Plaintiff may receive inquiries for employment verification, *see id.* at 15; but Defendant CIA does not maintain records of such inquiries because they go to the outside entities, *see id.* However, if a prospective employer had contacted the cover provider, the cover provider would not have had access to a covert contract

CIA employee's personnel file and would not have had access to any alleged negative information that may have been contained therein. *See id.*

At the time that his contract expired, Plaintiff held a Top Secret/Sensitive Compartment Information ("SCI") security clearance. *See* Declaration of William Milbourn, Jr. ("Milbourn Decl."), at ¶ 7. That security clearance lapsed as a matter of law when Plaintiff's employment with Defendant CIA ended. *See id.* (citing Exec. Order No. 12968, § 2.1(b)(4) ("access to classified information shall be terminated when an employee no longer has need for access")). "Access eligibility" for a former employee can be reapproved or "crossed-over" for up to a period of two years if certain conditions are met. *See* Exec. Order No. 12968, § 3.3(d). A former employee would be eligible for such "cross-over" if he were

> determined to be eligible based on a favorable adjudication of an investigation completed within the prior 5 years and . . . [had] been retired or otherwise separated from the United States Government employment for not more than two years; provided there is no indication that the individual may no longer satisfy the standards of this order, the individual certifies in writing that there has been no change in the relevant information provided by the individual for the last background investigation, and an appropriate record check reveals no unfavorable information.

*See id.*

Plaintiff's last investigation was completed in November 1998. *See* Milbourn Decl. at ¶ 10. Thus, under the Executive Order, his security clearance could only have been reapproved and "crossed-over" to another agency until November 2003. *See id.* After that date, Plaintiff, like any other former employee whose "reapproval" period had expired, would have been required to apply for a new security clearance with his employer as his sponsor. *See id.*

Although Plaintiff was not authorized to reveal his relationship with Defendant CIA to a

government contractor, there are procedures available by which a covert employee can request and receive authorization from the Defendant CIA component that sponsored his security clearance to arrange to have his security clearance crossed-over to another agency. *See id.* at ¶ 15; Pierson Decl. at ¶ 13. Defendant CIA has no record of Plaintiff making such a request or approval of such a request under this procedure. *See* Pierson Decl. at ¶ 13.

Defendant CIA's Clearance Division maintains records regarding any inquiries that employers make regarding an individual's security clearance. *See* Milbourn Decl. at ¶ 16. The Clearance Division has no record of any inquiry by a government contractor or other prospective employer regarding the status of Plaintiff's security clearance. *See id.* at ¶ 17. Had a prospective employer contacted the Clearance Division without the prior authorization described above, it could not have verified that Plaintiff had been an employee or even held a security clearance with Defendant CIA because of the classified nature of his employment. *See id.* at ¶ 18. Instead, the Clearance Division would have affirmatively denied that Plaintiff had any association with Defendant CIA. *See id.* Moreover, because such an inquiry would have suggested a potential breach of security, Defendant CIA would have, most likely, conducted an investigation into it. *See id.* Certainly, at a minimum, such an unusual event would have been noted in Plaintiff's security file. *See id.* However, there is no such record of any contact by a government contractor in Plaintiff's security file. *See id.* at ¶ 17.

Finally, even if Plaintiff's relationship with Defendant CIA had not been classified and a government contractor had contacted the Clearance Division, Defendant CIA would have only provided limited information as to whether the individual was eligible for a "cross-over" or if a new security clearance application needed to be initiated. *See id.* at ¶¶ 11-12. If a new application had

been submitted, Defendant CIA would have revealed whether the application had been approved or denied. *See id.* at ¶ 12. Defendant CIA would not have provided the government contractor with the reason for any denial of a security clearance. *See id.* Nor would it have provided the government contractor with access to an individual's security files. *See id.* at ¶ 11. In fact, Defendant CIA's employees who respond to inquiries have access only to general information regarding the status of an individual's security clearance and a history of when clearances have been requested and investigations completed with respect to an individual. *See id.* at ¶ 12. Thus, even if Plaintiff's security file contained adverse information regarding security problems he may have had, individuals providing verification of clearances could not have revealed any such information to a potential employee. *See id.*

**B.     Procedural background**

Plaintiff filed this action against the CIA, the Director of the CIA and several others under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, the Privacy Act, 5 U.S.C. § 552a, and the Due Process Clause of the Fifth Amendment to the United States Constitution. Specifically, Plaintiff alleged nine violations of his rights stemming from Defendant CIA's decision to terminate his employment.

Defendant moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim or, in the alternative, to transfer venue to the Eastern District of New York. In a Memorandum Opinion and Order, the Court (Roberts, J.) denied the motion to transfer venue and granted in part and denied in part Defendant's motion to dismiss. *See Peter B. v. CIA*, 620 F. Supp. 2d 58 (D.D.C. 2009). The Court granted Defendant's motion with respect to Counts I and IV, which

raised claims challenging Plaintiff's termination and other personnel actions under the Administrative Procedure Act, 5 U.S.C. § 706, finding that the Civil Service Reform Act precluded those claims. The Court denied the motion with respect to Plaintiff's claims that Defendant CIA deprived him of a liberty interest without due process (Counts II, III, V, and IX) and claims alleging violations of the Privacy Act, § 552a (Counts VI-VIII).

Defendant then filed the pending motion for summary judgment with regard to the remaining claims. *See* Dkt. No. 35. Plaintiff filed papers in opposition to that motion and sought further discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. *See* Dkt. No. 39. Defendant filed its papers in further support of its motion and in opposition to Plaintiff's request for further discovery. *See* Dkt. No. 44.

At a hearing at which the Court heard oral argument in support of and in opposition to Defendant's motion for summary judgment, the Court discussed several issues with counsel. At that time, Plaintiff's counsel acknowledged that, although there were nine causes of action in the complaint, there were actually only two causes of action that were not time-barred: (1) a cause of action based on Plaintiff's allegations that Defendant CIA, through its employees, had violated his liberty interest under the Fifth Amendment to the United States Constitution stemming from the termination of his employment with Defendant CIA in 2002, and (2) a cause of action based on Plaintiff's allegation that Defendant CIA, through its employees, violated his rights under the Privacy Act with respect to the termination of his employment with Abraxis Corporation in 2006, *see* 5 U.S.C. § 552a(e)(6).

With respect to Plaintiff's motion for additional discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, the Court asked Plaintiff's counsel to identify the material factual

disputes that Plaintiff alleged existed between him and Defendant based on the declarations that Defendant had submitted in its motion for summary judgment. The Court provided Plaintiff with an opportunity to file papers to support his contention that such material issues of fact existed to warrant the discovery he sought.

The Court has now reviewed the parties' submissions in support of and in opposition to Plaintiff's motion for additional discovery, as well as the parties' submissions and oral arguments in support of and in opposition to Defendant's motion for summary judgment, and the following constitutes the Court's written disposition of both motions.

### III. DISCUSSION

A.     **Summary judgment standard**

Summary judgment is appropriate when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quotation omitted). In assessing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Hildebrandt v. Vilsack*, No. 04-1423, 2015 WL 2061678, *2 (D.D.C. May 5, 2015) (citations omitted). "A disputed fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quotation omitted). "A dispute over a material fact is 'genuine' if it could lead a reasonable jury to return a verdict in favor of the nonmoving party." *Id.* (citations omitted). "'[T]he moving party is entitled to judgment as a matter of law if the nonmoving party "fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Id.* (quotation omitted).  Therefore, when considering a motion for summary judgment, the court's job is "'not [to] determine the truth of the matter, but instead [to] decide[] only whether there is a genuine issue for trial.'"  *Id.* (quotation and other citations omitted).

**B.   Plaintiff's Fifth Amendment liberty interest claim**

In *Bd. of Regents v. Roth*, 408 U.S. 564 (1972), the Supreme Court established two tests to determine whether a plaintiff had established a protected liberty interest.  Under the first test, referred to as the "reputation-plus" test, a plaintiff can show a protected liberty interest if he establishes that "the government changed his status and accompanied such a change with defamation that 'seriously damage[d] his standings and associations in the community.'"  *Peter B. v. CIA*, 620 F. Supp. 2d 58, 70 (D.D.C. 2009) (quoting *M.K. v. Tenet*, 196 F. Supp. 2d 8, 15 (D.D.C. 2001)) (citing *O'Donnell v. Barry*, 148 F.3d 1126, 1139-40 (D.C. Cir. 1998)).  Defamation alone does not give rise to a due process claim.  *See id.* (citations omitted).  "'For a defamation to give rise to a right to procedural due process, it is necessary . . . that the defamation *be accompanied by* a discharge from government employment' or other adverse personnel action."  *Id.* at 71 (quoting *Mosrie v. Barry*, 718 F.2d 1151, 1161 (D.C. Cir. 1983)).  "'Although the conceptual basis for reputation-plus claims is not fully clear, it presumably rests on the fact that official criticism will carry much more weight if the person criticized is *at the same time* demoted or fired.'"  *Id.* (quoting *O'Donnell*, 148 F.3d at 1140) (citing *Doe v. Dep't of Justice*, 753 F.2d at 1113 n.25 ("conclud[ing] only that a government employee must be given a name-clearing hearing when the government disseminates allegedly false and reputation-destroying charges against her in the course of her

-9-

discharge")).

Under the second test, referred to as the "stigma or disability" test, "a protectable liberty interested is implicated if the government alters the employee's status and such a change 'foreclose[s] his freedom to take advantage of other employment opportunities by either (a) automatically excluding him from a definite range of employment opportunities with the government or (b) broadly precluding him from continuing his chosen career.'" *Id.* (quoting *M.K.*, 196 F. Supp. 2d at 15) (citing *O'Donnell*, 148 F.3d at 1140). If the plaintiff proves that "the government has infringed upon [his] protected liberty interest under either test, the person has a due process right to notice and an opportunity to refute the charges against him and to clear his name." *Id.* (citing *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985) (holding that because a Fifth Amendment liberty interest claim implicates an interest in one's "post-employment reputation rather than any right to continued employment," the "well-settled remedy" is a name-clearing hearing)).

As this Court previously held when it considered Defendant's motion to dismiss, "[t]o the extent [Plaintiff] is alleging only that the defendants' defamatory statement caused his termination, he has not stated a claim under the reputation-plus test because the defendants' alleged defamatory statements did not accompany his termination." *Peter B.,* 620 F. Supp. 2d at 71. The Court further explained that, "[a]bsent a showing that the individual defendants' statements were offered as reasons for the decision to terminate [Plaintiff], the individual defendants' conduct was only ordinary defamation that does not implicate a liberty interest." *Id.* at 72. However, the Court found that it was plausible that Plaintiff was alleging that Defendant "publicly adopted the individual defendants' defamatory statements against [Plaintiff] as the reasons for [his] termination" and such

an allegation would state a claim under the reputation-plus test. *Id.* Likewise, the Court held that, if Plaintiff's "allegation that there is negative information injuring his reputation in his file that is publicly available to future employers states a reputation-plus claim if he is alleging that the negative information in his file consists of the reasons for his termination." *Id.* The Court concluded that, "[w]ithout evidence of the contents of [Plaintiff's] personnel files, the record does not reflect whether the alleged 'false and defamatory information concerning [Plaintiff]' made available to the contractors was the reason for his termination, which would implicate a liberty interest requiring due process, or was simply defamation unrelated to any determination of [Plaintiff's] employment status, which does not confer any due process right." *Id.* Moreover, the Court held that, based on Plaintiff's allegations, it was impossible to tell whether any alleged derogatory statements were in fact statements that injure one's reputation under the law. *See id.* In this regard, the Court noted that "a statement that simply indicates a person's ineligibility for a security clearance, without more, would not be an injury to reputation." *Id.* (citation omitted). The Court concluded that, based on Plaintiff's allegations, it was "a reasonable inference that the alleged statements disseminated throughout the CIA to cause his termination might have been sufficiently defamatory to injure [Plaintiff's] reputation and may have been adopted as reasons for his termination and subsequently communicated to his potential employers as the reasons for his termination." *Id.* at 72-73.

    Defendant argues that there is no evidence to support Plaintiff's reputation-plus claim under either of his theories, i.e., that his former supervisor Margaret Lyons and others made defamatory statements about him and that Defendant publicly adopted those statements as the reasons for Plaintiff's termination or that there is negative information injuring his reputation in his file that is

-11-

publicly available to future employers and that the negative information in his file consists of the reasons for his termination. First, Plaintiff was a contract employee and the term of his contract simply expired. *See* Pierson Decl. at ¶ 5. In fact, at the time of his separation from Defendant, Plaintiff signed a statement acknowledging that he understood that his contract had expired. *See id.* at Attachment 2. Furthermore, Defendant has not made any charge or public statement against Plaintiff that could cause harm to his reputation. *See* Dkt. No. 35 at 11.

Alternatively, Defendant argues that, even if it had given defamatory reasons for not renewing Plaintiff's contract, Plaintiff still could not prevail on his reputation-plus claim unless he could demonstrate that those reasons were made public. *See Peter B.*, 620 F. Supp. 2d at 72. Defendant contends that Plaintiff cannot demonstrate that it (1) made any public stigmatizing statements regarding the failure to renew his contract or (2) made files containing any alleged stigmatizing reasons for the failure to renew his contract available to prospective employers. *See* Dkt. No. 35 at 11. In his complaint, Plaintiff does not cite any direct evidence that Defendant made any such public disclosures; instead, he infers that defamatory reasons exist and were made public based on his assertion that he had received job offers from unspecified government contractors and those offers were later revoked. *See* First Amendment Complaint at ¶¶ 20, 60. Plaintiff claims that those alleged offers were revoked because Defendant had disseminated defamatory accusations regarding his "termination" to the government contractors or made files containing defamatory reasons for his termination available to prospective employers. *See id.*

Defendant contends that the facts do not support Plaintiff's allegations. First, there should not have been any reason for a prospective employer to have contacted Defendant because of the classified nature of Plaintiff's employment with Defendant. *See* Dkt. No. 35 at 12. Since Plaintiff's

relationship with Defendant remains classified, it would have violated his secrecy agreement for Plaintiff to have revealed his relationship with Defendant.  *See* Pierson Decl. at ¶ 10.  If Plaintiff's relationship with Defendant were revealed and a prospective employer contacted Defendant regarding his employment, Defendant would not have been able to confirm his employment, much less reveal any details regarding the reasons why his employment ended.  *See id.* at ¶ 12.

Second, Defendant contends that there is no record of any inquiry by a prospective employer regarding Plaintiff to Defendant.  *See id.*  It is Defendant's policy that requests for employment verification must be in writing.  *See id.*  Moreover, in Plaintiff's case, had an employer contacted Defendant directly, it would have indicated a potential breach of security.  *See id.*  Therefore, Defendant would have noted it and, more than likely, conducted an investigation into it.  *See id.*  Thus, Defendant asserts that Plaintiff's claim that it made public statements regarding the reasons for not renewing his contract has no factual basis.  *See* Dkt. No. 35 at 12-13.

Third, Defendant argues that, even if a prospective employer had made an inquiry by a cleared contact regarding Plaintiff, Defendant would not have provided any details regarding the reasons why his employment ended.  *See* Pierson Decl. at ¶ 14.  The only information that Defendant would have shared with a cleared contact would have been salary information, service computation date, and other general information data.  *See id.*  Defendant has a strict policy of not sharing other information that might be in an individual's personnel file.  *See id.*; *see also* Dkt. No. 35 at 13 (citing Exhibit 2 to Dove Decl (Dkt. No. 13-3) ("the reasons for termination or resignation of agency employment shall not be disseminated outside the agency to any private or Federal government body without the consent of the employee").  Nor does Defendant provide prospective employers access to an employee's personnel files.  *See* Pierson Decl. at ¶ 14.

For all these reasons, Defendant argues that Plaintiff cannot establish the requirements for the "reputation-plus" test because he cannot establish that Defendant made public defamatory statements regarding Plaintiff in connection with the expiration of his contract. *See* Dkt. No. 35 at 13.

Furthermore, Defendant contends that Plaintiff cannot establish a deprivation of a liberty interest under the "stigma or disability" test. *See* Dkt. No. 25 at 13. Plaintiff bases this claim on allegations that Defendant "intentionally interfered with [his] efforts to obtain employment in his chosen field with government contractors, particularly by impeding the transfer of his security clearance or by implying that derogatory information existed that would preclude the granting of a security clearance." *See id.* (citing 1st Am. Compl., ¶ 59).

A review of the evidence on which Plaintiff relies to support his claim that an issue of material fact exists with regard to his liberty interest due process claim under the "reputation-plus" test shows that none of this evidence supports his contention. As a preliminary matter, whether Plaintiff was a contract employee or a staff officer at the time his employment was terminated has nothing to do with whether or not he has a protectable liberty interest. Whatever his employment status, the change in status that forms the basis for his due process claim is the termination of his employment. Although the parties may disagree about Plaintiff's employment status at the time that his employment was terminated, it is the fact of the termination, not his actual employment status at the time, that is material to the issue at hand. Thus, the Court finds that the parties' disagreement about Plaintiff's employment status in 2002 is not a material fact and, therefore, does not require additional discovery in order for Plaintiff to respond to Defendant's motion for summary judgment.

In addition to the amended complaint, Plaintiff relies on his declaration, the Abraxis e-mails,

and his counsel's Rule 56(f) declaration to support his contention that he has established that an issue of material fact exists with respect to whether Defendant made adverse public disclosures to one or more contractors that harmed Plaintiff's reputation. There are several problems with this evidence. First, there is no temporal proximity between the time that Plaintiff's employment was terminated and the time that Defendant allegedly made adverse public disclosures to Abraxis, which caused Abraxis to rescind its job offer to Plaintiff. Defendant terminated Plaintiff's employment in October 2002. Plaintiff, by his own admission, did not contact Abraxis' founder until the summer of 2006, almost four years after his termination. *See* Dkt. No. 39-1, Declaration of Peter B dated February 1, 2010 ("Peter B Declaration"), at ¶ 28. Thus, even assuming that Defendant made some statements to Abraxis that were defamatory in nature, these statements were not made at the time that Plaintiff's employment was terminated. Thus, any such statements, made nearly four years after Plaintiff's employment with Defendant CIA terminated, could not give rise to a due process claim.

Alternatively, to the extent that Plaintiff's claim is based on his assertion that Defendant placed negative information in his personnel file, which is publicly available to future employers, this would state a reputation-plus claim if he is alleging that the negative information in the file consists of the reasons for his termination. *See Peter B.*, 620 F. Supp. 2d at 72. The evidence on which Plaintiff relies as a basis for his claim that he has raised a material factual issue regarding whether Defendant made adverse public disclosures to one or more contractors that harmed his reputation simply does not support that assertion. The Abraxis e-mail on which Plaintiff relies merely states as follows:

> Peter we need to speak. [I]n our brief interaction I think you find me honest and frank. [T]his relationship is trending in a direction [I] may not be able to recover. [T]he customer you met with has declined any

> interest. [T]heir decline was a "firm" decline. [A]dditional research
> on our side re your utility from there is finding some inconsistencies
> [sic] in what you provided and what is a matter of public record.

*See* Dkt. No. 20-1 at 1.

Even if, as Plaintiff argues, the "customer" mentioned in the e-mail is Defendant CIA, there is nothing in the e-mail that indicates that Defendant provided any information about Plaintiff to Abraxis. In fact, the problem for Abraxis appears to be the inconsistencies between some information Plaintiff provided and what was a matter of public record. Thus, this e-mail does not raise an issue of fact that is material to Plaintiff's liberty interest due process claim.

Furthermore, the statements in Plaintiff's declaration offer nothing but conjecture about what might have occurred. In addition, Plaintiff concedes that the alleged defamatory information might have been "based on what defendant Lyons had told [CIA officials] sometime prior to that date, in 2002 or possibly later, or because the officials played a role in my 2002 termination." *See* Peter B Declaration at ¶ 40.

Based on the lack of anything in the materials that Plaintiff has provided that even remotely suggests that Defendant CIA made any statements to Abraxis about Plaintiff, the Court concludes that Plaintiff has not shown that there are any material issues of fact in dispute with regard to his "reputation-plus" liberty interest due process claim for which he requires discovery before responding to Defendant's motion for summary judgment.

With respect to the "stigma or disability" text, Plaintiff only points to one issue of disputed fact – whether Defendant CIA impeded the transfer of his security clearance or disseminated any adverse information to government contractors regarding his security clearance. Plaintiff relies on the same information on which he relied with respect to the "reputation plus" test. However, as

noted, there is nothing in the Abraxis e-mail or Plaintiff's declaration that demonstrates that Defendant CIA impeded the transfer of his security clearance or disseminated any adverse information to Abraxis regarding his security clearance. There is no mention in the e-mail about any problems with Plaintiff's security clearance or that Abraxis had made inquiries about Plaintiff's security clearance. Furthermore, a person does not have a liberty interest in a security clearance. *See Jones v. Dep't of Navy*, 978 F.2d 1223, 1226 (Fed. Cir. 1992). "An employee's liberty interest centers on his concern for his reputation and good name . . . [and] '[a] clearance does not equate with passing judgment upon an individual's character.' . . ." *Id.* (internal quotation and other citation omitted).

In sum, for the above-stated reasons, the Court finds that Plaintiff has not identified any material factual disputes that exist regarding his liberty interest due process claim under either the "reputation-plus" or the "stigma or disability" test; and, therefore, the Court denies his motion for Rule 56(f) discovery and grants Defendant's motion for summary judgment with respect to this claim.

**C.      Plaintiff's Privacy Act claim**

Plaintiff asserted Privacy Act claims under three provisions: 5 U.S.C. §§ 552a(e)(2), (e)(5), and (e)(6). However, as Defendant correctly notes, at the December 7, 2012 proceeding, Plaintiff acknowledged that the only Privacy Act claim that was not time-barred was his claim under § 552a(e)(6), which requires that, "prior to disseminating any record about an individual to any person other than an agency, . . . [an agency shall] make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes[.]" 5 U.S.C. § 552a(e)(6).

Plaintiff relies on the same information to demonstrate that there is a dispute about material issues of fact regarding his § 552a(e)(6) claim as he did his due process claim. However, none of the items on which he relies creates any such dispute. There is nothing to indicate that Defendant disseminated any record to Abraxis, let alone an inaccurate record. The Court finds that Plaintiff has not pointed to anything that raises an issue of fact regarding this claim and, therefore, denies his motion for discovery pursuant to Rule 56(d) and grants Defendant's motion for summary judgment with regard to this claim.

## IV. CONCLUSION

Having reviewed the record in this matter, the parties' submissions and oral arguments and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, *see* Dkt. Nos. 39, 49, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for summary judgment, *see* Dkt. No. 35, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: March 30, 2016
      Syracuse, New York

                                            Frederick J. Scullin, Jr.
                                            Senior United States District Judge